OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed.
On February 18, 1979, the body of Richard Eaton was found bound and gagged inside an abandoned trailer. More than four years later, defendant was indicted for Eaton’s murder. At defendant’s trial, the prosecution’s primary witness was Henry Hill, who testified that his friend, defendant, had told him that he had murdered Eaton because Eaton had not paid up on á cocaine deal and that this would be a lesson to two other drug purchasers who had not yet paid defendant. Hill, whose testimony was essential to the prosecution’s case, was a career organized crime figure who turned informant, entered the Federal Witness Protection Program, and in 1980 entered into cooperation agreements with both the Nassau County District Attorney and the Federal Organized Crime Strike Force. In his Federal agreement, Hill was granted immunity from Federal prosecution in exchange for his cooperation in an ongoing Organized Crime Strike Force investigation "and [regarding] any other criminal activity.” The Federal authorities also agreed to recommend to( other law enforcement agencies that they not prosecute Hill if he gave "immediate, *835 full and truthful disclosure, testimony, etc.” The agreement further provided that it:
"will not prevent the Government from prosecuting you for perjury, should it be discovered that you have given false testimony in connection with these matters.
"In addition, in the event that you do not fully comply with all the other terms of this understanding (immediate, full and truthful disclosure, testimony, etc.), this agreement will be nullified. Should this occur, the Government will be free to prosecute you with regard to any and all violations of the Federal Criminal Law in which you may have participated and to use against you, any and all statements made by you and testimony you have given prior to and subsequent to the date of this agreement.”
At trial, defendant cross-examined Hill extensively regarding his life of crime, and particularly regarding his cooperation arrangements and his receipt of substantial amounts of money from the Government. The trial court then permitted the prosecution to introduce the Federal cooperation agreement on redirect examination of Hill. Defendant was subsequently convicted of second degree murder, and the Appellate Division affirmed.
At trial, defendant objected to the introduction of the Federal cooperation agreement on the ground that it was an agreement "between Nassau County, not Kings County, the District Attorney and Henry Hill. I submit that the witness, Henry Hill, has already received State immunity which is a different facet when he testified before a State Grand Jury that led to his indictment”. This objection was insufficient to preserve defendant’s current claim that the Federal agreement was erroneously admitted because it promised Hill immunity only from Federal, not State, prosecution and was therefore irrelevant, and that the agreement was highly prejudicial to the defense in that it bolstered the credibility of Hill and conveyed the false impression that Hill would pay a high price for perjury. We thus have no occasion to consider whether and under what circumstances Federal cooperation agreements are admissible to rehabilitate witnesses’ credibility (see, United States v Cosentino, 844 F2d 30 [2d Cir 1988]; United States v Borello, 766 F2d 46, 56), or to consider any other issues relating to the use of such testimony (see, e.g., Note, Let’s Make a Deal: A Look at United States v Dailey and Prosecutor-Witness Cooperation Agreements, 67 Bos U L *836 Rev 749; Note, Accomplice Testimony Under Contingent Plea Agreements, 72 Cornell L Rev 800).
Defendant further contends that he was denied ¿ fair trial when the prosecutor during summation mischaracterized the cooperation agreement by stating that the Federal Government would be able to prosecute Hill for all of his criminal behavior, pursuant to the terms of the agreement, if it determined that he had perjured himself in this case. We disagree. Defense counsel had the opportunity during his own summation to provide the jury with his interpretation of the scope of the agreement; the jurors had the text of the cooperation agreement before them and were free to examine it and determine whether the prosecutor had indeed mischaracterized it in his summation. In any event, by neglecting to speak up when the trial court failed to instruct the jury on this point, as the court earlier said it would, defendant denied the court an opportunity to mitigate any harm caused by the prosecutor’s purported misinterpretation of that document (see, 128 AD2d 542, 543).
Finally, defendant’s challenge to the prosecutor’s comments during summation allegedly referring to defendant’s failure to testify has not been preserved. Contrary to defendant’s contention, the prosecutor’s ambiguous comments do not fall within the exception to the preservation rule enunciated in People v McLucas (15 NY2d 167, 170-171). The prosecutor made no reference to defendant’s failure to testify, and the comments he did make were not of such character as would naturally and reasonably be interpreted by the jury as adverse comment on defendant’s failure to take the stand (see, People v Garcia, 41 NY2d 861, affg on opn below 51 AD2d 329, 332-333).
Defendant’s remaining contentions are unpreserved or without merit.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed in a memorandum.