THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWIN VIENTOS, Appellant.

First Department, November 8, 1990

## APPEARANCES OF COUNSEL

*Michael Schwartz* of counsel *(Mark Dwyer* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Robert P. App* of counsel *(Philip L. Weinstein,* attorney), for appellant.

## OPINION OF THE COURT

WALLACH, J.

The evidence at a *Huntley* hearing established that at 8:30 A.M., on April 24, 1987 police officers observed defendant and his codefendants loading plastic garbage bags either into, or out of, the trunk of a car. A computer monitor, which had "P.S. 192" written on top, protruded from one of the garbage bags. One officer testified that about one-half hour earlier he had heard a radio run concerning a burglary at P.S. 192, which was four blocks away. Upon inquiry, a codefendant claimed that they had purchased the computer equipment from a "crack head". The defendants were arrested and advised of their rights at some point between arrest and arrival at the precinct. At the precinct, the defendants talked among themselves. After again being advised of his rights,

defendant Vientos was interviewed by a detective about 1½ hours after his arrest. Defendant told the detective that when he and his companions had been playing basketball around midnight, they were approached by two Hispanic males who offered to sell them computer parts, which the pair admitted were from a school, for $50. When police stopped them the following morning, the buyers were engaged in moving the equipment so purchased into defendant's apartment.

At trial, expert testimony was adduced to show that there was no resale market for the particular brand of computer equipment. Further, if the school were to replace the old equipment with new, the cost would be in excess of $1,000. The cost to anyone else who undertook to purchase comparable, used equipment, could not be ascertained, mainly because no market in such secondhand equipment existed. School officials testified that the equipment was only two years old, and in good condition.

■ In order to sustain this conviction for criminal possession of stolen property in the fourth degree, the People were required to prove beyond a reasonable doubt that the "value" of the computer equipment exceeded $1,000 (Penal Law § 165.45 [1]). Penal Law § 155.20 (1) provides that "value means the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime." Thus, the evidence furnished by the People's expert, Raymond Navarette, as to the cost to the school of replacing the stolen equipment was competent to establish the value element of the crime, since the predicate for such evidence (nonascertainability of any market value) had also been furnished by him. Under these circumstances, the trial court's instructions on this aspect of the case were correct, in that it advised the jury to consider market value in April 1987 first, and only if they concluded that such was unascertainable, could they consider replacement value, and that to convict they would have to conclude that this alternative measure of value exceeded $1,000.

Our decision in *People v Corbett* (129 AD2d 433) upon which defendant relies on appeal, is entirely distinguishable. *Corbett* was convicted of possessing a public pay telephone with its receiver missing which had been ripped from the wall of a restaurant the previous day. In that case "the only evidence on that issue was the subjective opinion of the People's expert

that a telephone without a receiver has no value." *(People v Corbett, supra,* at 435.) Since an essential element of Corbett's conviction for criminal possession of stolen property in the second degree as then enacted was value in excess of $250, we reduced the conviction to the third degree misdemeanor level. On this record defendant is not entitled to similar relief.

Furthermore, it was not necessary for the People's evidence upon the value of the computer equipment to address its state of depreciation, nor for the court to instruct on this issue. Assuming that defendant's motion for a trial order of dismissal was sufficient to preserve this issue *(but see, People v Burke,* 72 NY2d 833; *People v Bynum,* 70 NY2d 858), we would note that as a general rule the depreciation undergone by personal property in the hands of the owner before its criminal asportation or prior to its receipt by the criminal receiver is relevant only where the People are prosecuting on the theory of market value (as they are bound to do if there is a market value), and the depreciation is directly relevant to the reduced price that the depreciated chattel could command in that very same market *(People v Harold,* 22 NY2d 443 [pump damaged by amateur installation efforts]; *People v Rivera,* 114 AD2d 305 [secondhand stolen car in damaged condition]; *People v Medina,* 111 AD2d 653, *appeal dismissed* 67 NY2d 644 [broken up jewelry and watch parts]). Since replacement value only comes into play where there is no market at all for the secondhand item, depreciation does not affect the impact of the wrong upon the owner who can only turn to the retail seller to make good his loss. This recognition of economic reality was precisely the point of the 1965 legislative recodification of the Penal Law when "cost of replacement" was added to Penal Law § 155.20 as an alternative to market value when the latter "cannot be satisfactorily ascertained".

In our view, the dissent fails to appreciate the distinction between obsolescence and depreciation. Where, as here, we are dealing with a computer, a rapid advance in the state of the art may well render it unmarketable even if its physical condition is "depreciated" only by normal wear and tear. Such nonmarketability arises not from depreciation in either the physical or accounting sense, but by the circumstance that any market for the item has simply evaporated due to technological development. Under these circumstances the legislative amendment contemplates that the real injury to the owner of the computer is not to be measured by any artificial computation of depreciation, but rather by the "value" he must

expend to make himself whole, i.e., "the cost of replacement". Depreciation, in this situation, is simply irrelevant.

 If defendant would assert the existence of a market, it is his burden to come forward with evidence to that effect; suffice to say no such showing was even attempted here. Contrary to the dissent, this burden allocation does not provide "a somewhat astounding example of impermissible burden shifting" any more than would occur if the People were to offer evidence in a run-of-the-mill market value case that the stolen chattel was worth $1,000, and the defendant undertook to contest that proof with evidence that the value was in fact $500. The imposition upon a defendant of the burden to come forward with proof in mitigation of criminal liability, and even to discharge that burden, if at all, by a preponderance of the credible evidence is constitutionally acceptable (see, *People v Patterson,* 39 NY2d 288), as for example when a prima facie case of robbery in the first degree is made out with a showing that defendant displayed "what appears to be a pistol * * * or other firearm" but the defendant is permitted to reduce the grade of the offense if he can show the weapon was unloaded or incapable of discharging a shot (Penal Law § 160.15 [4]). Similarly, in a homicide prosecution the defendant is permitted to prove that he "acted under the influence of extreme emotional disturbance" to reduce the grade of the offense from murder to manslaughter (Penal Law § 125.25 [1] [a]). Here, the People established through the competent testimony of their expert (1) that there was no market, and hence no market value, for the stolen computer monitor, and (2) the cost of replacement to its owner. The People's proof of these statutory elements did not cast any burden on defendant; while he was free to controvert any aspect of this evidence without the concomitant burden created by any statute providing an affirmative defense, he was under no obligation to do so, and his "burden", if indeed it can be called that at all, would be simply to raise a reasonable doubt on the issue.

Nothing in *People v Harold (supra)* serves to undermine the validity of this conviction. *Harold* involved a new water pump purchased for $124 with a clear market value, albeit diminished by physical abuse resulting from the owner's inept mechanical handling. *Harold* sheds no light on the proper valuation procedure pertinent to a stolen chattel in a criminal prosecution for which no market exists. And, of course, it does not avail the wrongdoer (and he does not do so here) to complain that he was duped into reliance upon the poor

condition of the stolen item to mitigate his criminal liability; if there is no market he takes the subject of the theft as he finds it. with all the risks, including ultimate replacement valuation, attendant thereto.

■ We find no error in the introduction of defendant's statement to the detective, notwithstanding the suppression of a prior statement to arresting police an hour and a half earlier. There was a "definite, pronounced break in the interrogation" *(cf., People v Chapple,* 38 NY2d 112, 115; *cf., People v Torres,* 143 AD2d 582, 586), which was occasioned by a sufficient lapse of time, and interrogation by a different officer, so that the second introduced statement was not tainted by the shortcomings that led to suppression of the first, nor is there a basis for concluding that the earlier statement in any way "locked-in" defendant with respect to the contents of the second statement.

We have examined defendant's remaining contentions and find them to be meritless.

Accordingly, the judgment, Supreme Court, New York County (Rena Uviller, J.), rendered October 29, 1987, convicting defendant after a jury trial of criminal possession of stolen property in the fourth degree (Penal Law § 165.45 [1]), for which he was sentenced to an indeterminate term of imprisonment of 1⅓ to 4 years, to run consecutively to a prior 2⅓-to-7-year prison sentence, should be affirmed.

ELLERIN, J. (concurring in part and dissenting in part). While concurring in the conclusion that defendant's guilt of criminal possession of stolen property should be sustained, I cannot agree that the People established that the value of the stolen computer in this case exceeded $1,000, an essential element of the crime of criminal possession of stolen property in the fourth degree (Penal Law § 165.45 [1]), the degree of the crime of which the defendant stands convicted.

The "value of stolen property" is defined in Penal Law § 155.20 (1) as "the market value of the property *at the time and place of the crime,* or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime". (Emphasis added.)

It is clear from the statute itself that the cost of replacement of the property may be considered *only if* the market value cannot be satisfactorily ascertained. In this case, the only evidence as to value was the testimony of the People's expert, a buyer for a retail store chain, that his company does

not sell used equipment and that the manufacturer does not authorize its dealers to sell used equipment. The majority holds that this testimony is sufficient to establish the inability to satisfactorily ascertain the market value of the property thereby permitting the People to use cost of replacement as the proper measure of value.

The majority's statement, understandably unsupported by citation, that "[i]f defendant would assert the existence of a market, it is his burden to come forward with evidence to that effect", is a somewhat astounding example of impermissible burden shifting. The burden, of course, always remains on the People to prove the essential element of market value, if ascertainable, of the stolen property criminally possessed. *(See, i.e., People v Corbett,* 129 AD2d 433-434, *lv granted* 69 NY2d 1012, *appeal dismissed* 70 NY2d 870; *People v Rivera,* 114 AD2d 305; *People v Jones,* 111 AD2d 264, 265; *People v Medina,* 111 AD2d 653, 654; *cf., People v Leonard,* 62 NY2d 404, 411.)* The distinction between the People's burden, in the first instance, of establishing the essential *element* of market value and, once evidence of a market value is presented, the defendant's right to controvert the *amount* of that value is self-evident. In an attempt to blur this crucial difference, the majority offers "examples" of other burdens on the defendant "to come forward with proof in mitigation of criminal liability" which are statutorily delineated affirmative defenses and not the essential elements of the underlying crime, as is here the case. Significantly, no statutory authority is offered, nor does one exist, that proof of the proper value of the property involved in a prosecution for criminal possession of stolen property is an affirmative defense.

Undoubtedly, there are situations where the "market value" of property cannot be satisfactorily ascertained, but evidence merely indicating that there is no cognizable secondhand or resale market in certain stores for the particular item, here a used computer, is not sufficient to establish that a market value for the computer, as contemplated by the statute, cannot be satisfactorily ascertained.

That resale value is not the sole measurement of "market value" was made clear in *People v Harold* (22 NY2d 443) where the Court of Appeals set forth the mechanism for ascertaining the market value of a stolen item of property that is in a used and/or damaged state at the time of the theft, as is here the case. In *People v Harold (supra),* the property involved was a water pump that had been purchased

five days earlier for $124 (at a time when the statutory dividing line between grand and petit larceny was $100) and which had been bent and damaged in the course of being installed prior to its theft. In determining whether the People had sufficiently established that the value of the pump exceeded $100, the court expressly held (at 445) that the market value of the stolen item "is to be measured by what the thief would have had to pay had he purchased the item instead of stealing it" and that "the original cost of an item is not proof of its value some five days after the goods left the store" since "the value of the pump must also be reduced to reflect the mechanical prowess of Crego and Terpering" (the less than skillful installers). The court further noted that "[a]dditionally, an allowance must be made for the fact that the pump, when taken, was no longer new" (at 445).

In the instant case market value could have been easily and satisfactorily established by appropriate evidence as to the original cost of the computer less the amount to be attributed to depreciation. *(See, People v James,* 67 NY2d 662; *cf., People v Batista,* 141 AD2d 654.) No such evidence was produced by the People who, instead, chose to rely upon replacement cost. This however, was not consonant with the statute which mandates proof of market value, where ascertainable, before any consideration of replacement cost can come into play.

Accordingly, since the market value of the stolen computer at the time and place of the crime was here ascertainable, the People's failure to establish that value would require that the defendant's conviction be reduced to criminal possession of stolen property in the fifth degree (Penal Law § 165.40).

Even if we were to assume, as the majority argues, that the computer was obsolete at the time it was stolen and therefore without a legitimate resale market, it has been held that the value of such property in a thieves' or underworld market, or the amount requested by the criminal possessor of the item, may properly be used in determining market value for purposes of the criminal possession statute *(see, People v Colasanti,* 35 NY2d 434; *People v Corbett, supra).* In any event, there was no testimony here that this equipment was technologically obsolete, and wholly without value, as the majority presumes, but only that the manufacturer had discontinued this particular model.

While the majority emphasizes "the impact of the wrong upon the owner who can only turn to the retail seller to make

good his loss", which might be relevant if this were a civil case brought by such owner for damages, a different standard applies in the instant criminal action. "The purpose of the statutes fixing the higher degree of crime is not related to regulating the economic market but to assessing the scale of criminal operations by the persons charged with offenses under the statutes" *(People v Colasanti, supra,* 35 NY2d, at 437). Market value has long been held to be measured by what the thief would have to pay had he or she purchased the item instead of stealing it *(see, People v Harold, supra).* The majority's reliance on the 1965 amendment to the statute in support of its position that replacement value was added to the statute in recognition of the impact of the wrong upon the owner is puzzling. The legislative history of this statute merely states: "With a few minor changes of substance, this section substantially restates and clarifies the standards for evaluating stolen property contained in existing Penal Law §§ 1303, 1304 and 1305" (Commn Staff Notes on Proposed NY Penal Law, reprinted in 1967 Gilbert's Criminal Code & Penal Law, at 1c-72).

Moreover, it should be noted that even where replacement cost is properly used, this court has held that the depreciated condition of a stolen item must be taken into account in arriving at such replacement value. *(People v Medina,* 111 AD2d 653.) Of course, here no such evidence was provided.

SULLIVAN, J. P., and Ross, J., concur with WALLACH, J.; KASSAL and ELLERIN, JJ., concur in part and dissent in part in an opinion by ELLERIN, J.

Judgment, Supreme Court, New York County, rendered on October 29, 1987, affirmed.