THIRD DEPARTMENT, AUGUST, 1992

(August 13, 1992)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROY J. BOLUS, Appellant.—Crew III, J. Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered November 16, 1988, upon a verdict convicting defendant of the crimes of murder in the second degree (four counts), robbery in the first degree (two counts), burglary in the first degree (two counts), criminal possession of a weapon in the second degree and attempted murder in the second degree.

Defendant was charged in a 10-count indictment with the crimes of intentional murder, felony murder, attempted murder, robbery, burglary and criminal possession of a weapon as a result of an incident that took place in the early morning of March 9, 1988 at 57 First Street in the City of Albany. Five codefendants were also indicted and similarly charged except for the charge of attempted murder. Following a joint trial, defendant was convicted on all counts of the indictment and sentenced to an aggregate indeterminate term of 80 years to life imprisonment.

Defendant contends that County Court erred in failing to

suppress the oral and written statements given by him to Albany Police Detective Richard Keegan. It appears from the testimony at the suppression hearing that defendant was arrested in Ulster County at approximately 11:00 A.M. on March 9, 1988. He was turned over to State Trooper Anthony Barrera for transport to State Police headquarters in Albany County. When Barrera got into the troop car, he asked defendant his name and then inquired, without advising defendant of his *Miranda* rights, what happened, to which defendant replied "I guess I hung out with the wrong crowd". There was no further conversation between Barrera and defendant during the one-hour drive to State Police headquarters. It further appears that defendant slept during most of the trip. When Barrera and defendant arrived at State Police headquarters, defendant was met by Keegan who advised him of his *Miranda* rights and asked him if he was willing to give a statement. Defendant acknowledged his understanding of his rights and agreed to cooperate and give a statement.

Defendant contends that the statement given to Keegan was tainted by the earlier statement made to Barrera and should therefore have been suppressed. We disagree. It is true that the Court of Appeals has held that to be effective *Miranda* warnings must *precede* the subjection of a defendant to questioning. "Later is too late, unless there is such a definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning" *(People v Chapple,* 38 NY2d 112, 115). Here, unlike in *People v Chapple (supra),* defendant was not subjected to such continuous interrogation that the *Miranda* warnings administered thereafter can be said to be insufficient to protect his rights. The single question, "What happened?", followed by a one-hour drive to State Police headquarters during which time defendant slept continually, and the not insignificant fact that the subsequent questioning was conducted by a different officer from a different law enforcement agency, satisfies us that there was a definite and pronounced break in the interrogation process such that defendant was no longer under the influence of the initial questioning *(see, People v Salem,* 167 AD2d 840, *lv denied* 77 NY2d 911; *People v Shipman,* 156 AD2d 494, *lv denied* 75 NY2d 924).

With regard to defendant's contentions that there was no probable cause for his arrest, that the summation of the prosecutor was improper and that County Court improperly permitted the People to reopen their case, we have previously

determined those issues favorably to the People *(see, People v Jean-Pierre,* 169 AD2d 932, *lv denied* 77 NY2d 962; *People v Riley-James,* 168 AD2d 740, *lv denied* 77 NY2d 966). We have examined defendant's remaining arguments and find all but one to be meritless. Defendant argues that his consecutive sentences are invalid pursuant to Penal Law § 70.25 (2). The People concede and we find that, based upon *People v Riley-James (supra),* the consecutive sentence imposed for criminal possession of a weapon in the second degree was improper because that crime constituted a material element of both robbery in the first degree and burglary in the first degree *(see,* Penal Law § 160.15 [2]; § 140.30 [1]) and arose out of a single and continuous transaction. Therefore, the sentence imposed for criminal possession of a weapon in the second degree must run concurrently.

Mikoll, J. P., Levine, Mercure and Harvey, JJ., concur. Ordered that the judgment is modified, on the law, by reversing so much thereof as directed defendant to serve a consecutive term of imprisonment for the conviction of the crime of criminal possession of a weapon in the second degree; said sentence for that crime to run concurrently with the remaining sentences; and, as so modified, affirmed.