■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM HICKS, Appellant. [641 NYS2d 161] —Cardona, P. J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered January 25, 1995, upon a verdict convicting defendant of the crime of robbery in the first degree.

The first issue raised concerns the admissibility of certain oral and written statements. Defendant moved to suppress the statements given to the police which had been made both before and after he received his *Miranda* warnings. County Court granted the motion only as to those statements made

prior to the *Miranda* warnings. Defendant contends that the later statements were tainted by the earlier statements and, therefore, should have been suppressed. We disagree.

The evidence at the suppression hearing revealed that, on October 7, 1993 at 12:30 A.M., a clerk at a convenience store was robbed at knifepoint. Officer David Leonardo received a radio call almost immediately after the incident and, after obtaining a description of the perpetrator, began to patrol the area. His search led him to a motel where he saw an individual in one of the rooms fitting the description he had been given. He called for backup. Officer Robert Krug arrived and both officers entered the motel room. Defendant was handcuffed and placed under arrest. A pat-down frisk was conducted. Leonardo discovered a "wad" of money in defendant's pocket and asked defendant if it was his money. Defendant answered in the negative. Defendant was then asked if he robbed the convenience store and defendant stated that he had. Defendant was also asked where the knife was and he said it was in one of his pockets. Krug then found the knife in a pocket.

Thereafter, defendant was taken to the police car where he was given his *Miranda* warnings. He was transported to the convenience store for a show-up identification and was positively identified by the victim. The total time that elapsed between the robbery and the positive identification was approximately 15 minutes. Defendant was then taken to the police station. According to Officer Andrew Zostant, he was called in to aid in the investigation and arrived at the station before defendant did at approximately 12:55 A.M. He saw defendant shortly thereafter and asked defendant if he wanted to talk. Defendant indicated that he did and Zostant spoke with him for about 30 to 40 minutes obtaining oral statements. Zostant told defendant that he wanted to put the statements in writing which took another 30 to 40 minutes. The written statement signed by defendant states that it was taken at 2:02 A.M.

It is true that to be effective *Miranda* warnings must be given *before* a defendant is questioned and that "[l]ater is too late, unless there is such a definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning" (*People v Chapple*, 38 NY2d 112, 115). In this case, we are of the view that defendant was not subjected to such continuous interrogation that the *Miranda* warnings given to him after he was questioned by the police in the motel room can be said to have been insufficient to protect his rights. After the initial questioning, defendant received and waived

his *Miranda* warnings. This was followed by the show-up identification and the ride to the police station, during which time defendant was not subjected to any further interrogation. These facts convince us that there was a definite and pronounced break in the questioning process such that defendant could no longer be said to be under the influence of the first inquiries (*see, People v Brown*, 195 AD2d 1055, *lv denied* 82 NY2d 848; *People v Schultz*, 187 AD2d 466; *People v Jacobs*, 136 AD2d 796; *cf., People v Bethea*, 67 NY2d 364). It is also not insignificant that the subsequent questioning was conducted by a different officer (*see, People v Bolus*, 185 AD2d 1007, *lv denied* 81 NY2d 785; *People v Vientos*, 164 AD2d 122, *affd* 79 NY2d 771).

Defendant next contends that he was improperly sentenced as a persistent violent felony offender. Prior to sentencing, he challenged the constitutionality of a guilty plea entered by him in 1980 to, *inter alia*, robbery in the second degree. Defendant, however, was again convicted in 1984 of robbery in the second degree and sentenced as a second felony offender. Normally, this would mean that, in the current matter, defendant would be estopped from challenging the 1980 conviction since it had been found to constitute a predicate felony in 1984 (*see, People v Seifert*, 209 AD2d 555, *lv denied* 85 NY2d 914; *People v Wallace*, 206 AD2d 825, *lv denied* 84 NY2d 834; *People v Cole*, 165 AD2d 737, *lv denied* 76 NY2d 1020). However, here the People never raised the estoppel issue at defendant's sentencing in this case. Instead, they argued the merits of whether the 1980 conviction was constitutional and County Court's decision addressed only that issue. Defendant was thus never afforded the opportunity to demonstrate whether there was good cause for his failure to contest the 1980 conviction at the time of his sentencing in 1984 (*cf., People v Jones*, 213 AD2d 801, 803, *lv denied* 85 NY2d 975).

We therefore consider the claim and, in so doing, find that defendant has failed to meet his burden of establishing that he was not advised, during the 1980 plea allocution, of all the requisite constitutional rights and privileges that he was giving up by his plea (*see, People v Lopez*, 123 AD2d 360, *lv denied* 68 NY2d 915) and that he entered a knowing, intelligent and voluntary guilty plea (*see, People v Montford*, 134 AD2d 207, *lv denied* 70 NY2d 1009). The record reveals, *inter alia*, that defendant declared that no promises, other than the proposed sentence, had been made to him in exchange for the plea and that he had consulted with his attorney regarding the plea. He stated that he was aware that he was giving up his right to a jury trial and his right to cross-examine witnesses. He

acknowledged the facts of the offense and stated that no one forced him to enter into the plea. Given these circumstances, we find that defendant's prior conviction was constitutionally obtained (*see, People v Harris*, 61 NY2d 9, 20-21). County Court, therefore, properly sentenced defendant as a persistent violent felony offender to an indeterminate prison term of 25 years to life.

Finally, we find no merit in defendant's contention that the nine-month delay between conviction and sentencing was unreasonable. The delay was caused by the need to obtain the transcript of defendant's 1980 plea, County Court's calendar congestion, the death of a member of the County Judge's family, and the unavailability of both counsel at various points in time. In our view, these constituted plausible reasons for the delay (*see, People v Drake*, 61 NY2d 359, 366; *People ex rel. Weingard v Casscles*, 40 AD2d 530).

Mercure, White, Peters and Spain, JJ., concur. Ordered that the judgment is affirmed.