Fuchsberg, J.
The question before us is whether defendant’s confession was voluntary and admissible, given the circumstances under which it was obtained. The County Court, after a Huntley hearing, determined that it was admissible, and the Appellate Division affirmed, two Justices dissenting. We reverse.
On December 3, 1971, at about 1:15 a.m., the defendant and a friend, Albert Beshon, were walking along the side of Route 22, headed toward Plattsburg. State Police Investigator Gerald Luck, driving by in the opposite direction, saw the pair and swung his car around into oncoming traffic in order to pull up beside them. Both Chappie and Luck agreed that Luck asked Chappie where he was going and then got out of the police car.
Luck himself admitted that he told Chappie he wanted to talk to him and ordered him to get into the police car. He further admitted that he "put” Chappie into the car, pushing him under the steering wheel and over into the passenger seat. According to Luck, he then questioned Chappie about several burglaries in the area, one of which had occurred just that night. Luck stated that he drove Chappie to the site of this burglary, where Chappie freely admitted his guilt and showed Luck where he, Chappie, and Beshon had broken into the building. Luck testified that he then gave Chappie his Miranda warnings and continued to question him. He drove Chappie to the sites of two more burglaries, where Chappie admitted to each of these and also to a fourth a little farther away. Luck stated that he then drove Chappie to police headquarters.
Once there, he questioned Chappie about each burglary, beginning with the latest one and working backward in time. After each round of questioning, Luck stated that he then typed up a confession and had Chappie read it. When this had produced four confessions, one for each burglary, he took Chappie before a local notary public to sign the four confessions. All of this activity consumed about four hours from the time Luck saw Chappie on the road.
Chappie’s own testimony confirms the sequence of events in *114 substance. His story differed from Luck’s only in the following respects: Chappie testified that Luck hit him while in the police car, bashed his head against a briefcase in the front seat, and threatened to throw Chappie off a nearby bridge if he did not confess to the burglaries. According to Chappie, he originally refused to get into the police car unless Luck had a warrant and unless he was under arrest, and refused to talk to Luck unless he was given a lawyer. Chappie testified that Luck repeated his threats periodically during the typing and signing procedures at the police station. He also testified that he believed these threats and was frightened of Luck during the entire procedure.
The majority below affirmed Chappie’s conviction, upon his plea of guilty to one count of burglary, on the authority of People v Tanner (30 NY2d 102). In that case we affirmed the conviction of a defendant whose testimony, directed toward the "cat out of the bag” theory (see United States v Bayer, 331 US 532), the lower courts found wholly incredible. The credibility of that defendant was for the lower courts to assess; we did not review their conclusions. Moreover, we refused to adopt any rule which would have the effect of automatically invalidating a confession. (See, also, People v Stephen J. B., 23 NY2d 611, 615; People v Jennings, 33 NY2d 880, affg 40 AD2d 357, 363.)
The case before us, however, unlike Tanner, is not premised on the theory that the defendant may have made his second confession on constraint of his first one. Chappie’s defense, as noted by the dissenters in the Appellate Division, is premised instead on the theory that the sequence of events, beginning with his impulsive and apparently illegal arrest* and ending with the four signed confessions, was, in reality, a single continuous chain of events. Because it focused on the Tanner approach, the majority made no findings of fact with respect to the continuous chain of events in this case. We hold that, as a matter of law, such a theory may support a claim that a confession such as this one is inadmissible because not truly voluntary.
*115 For authority we need look no further than Westover v United States (384 US 436), the companion case to Miranda itself. (Miranda v Arizona, 384 US 436.) In Westover, the defendant was arrested by local police and questioned about a particular crime. After several hours of interrogation, he was turned over to FBI agents in the same police station for questioning about two other crimes. Although the FBI agents administered warnings before beginning their questioning, and, though its agents constituted a separate interrogating team and represented a different sovereignty under our Federal system of governments, the Supreme Court found those warnings insufficient to overcome the effects of prior continuous interrogation. The court explained that a defendant under such continuous and custodial interrogation may well be put in such a state of mind that the warnings which would ordinarily suffice will no longer be enough to protect his rights.
Warnings, to be effective under the combined holdings in Miranda and Westover, must precede the subjection of a defendant to questioning. Later is too late, unless there is such a definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning. (George, The Fruits of Miranda: Scope of the Exclusionary Rule, 39 U Col L Rev 478, 492-493; see United States ex rel. B. v Shelly, 430 F2d 215, 218; Harney v United States, 407 F2d 586; Evans v United States, 375 F2d 355; cf. Darwin v Connecticut, 391 US 346; Clewis v Texas, 386 US 707, 710; Matter of Michael G., 40 AD2d 520; United States v Knight, 395 F2d 971, cert den 395 US 930.)
Unlike theories which require examination of a defendant’s testimony as to his state of mind and, thus, an assessment of his credibility, the Westover approach may be based on an assessment of external events. We find that the testimony of Officer Luck himself, in the case before us, supplies ample basis for the conclusion that Chappie was subjected to such a continuous interrogation that the Miranda warnings administered at the site of the burglary were insufficient to protect his rights. Given that insufficiéncy, his later confessions must be suppressed.
Accordingly, the order of the Appellate Division must be reversed, the motion to suppress granted, the plea vacated, *116 and the matter remitted to the County Court for further proceedings consistent with this opinion.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Wachtler concur; Judge Cooke taking no part.
Order reversed, etc.

 The record discloses no probable cause for the stop and, hence, the arrest would appear to be illegal and any fruits thereof tainted (see Brown v Illinois, 422 US 590; People v Martinez, 37 NY2d 662). The issue was not raised in either tribunal below and may not be considered here because the People were never put to their burden to show that the police conduct was legal (cf. People v Berrios, 28 NY2d 361, 367; People v Whitehurst, 25 NY2d 389, 391; People v Malinsky, 15 NY2d 86, 91).