■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v KENNETH GLOVER, Respondent.—Appeal, as limited by the People's brief, from so much of an order of the Supreme Court, Kings County, dated September 30, 1976, as, after a *Huntley* hearing, granted the branch of the defendant's motion which sought to suppress a statement made to an Assistant District Attorney on August 27, 1975. Order reversed insofar as appealed from, on the law, and the said branch of the motion denied. The facts are not in dispute. Shortly before the noon hour on August 27, 1975, the defendant-respondent was taken to the 90th Precinct in Brooklyn, where he was interrogated by Detective Brocato concerning his possible involvement in an armed robbery which had occurred on August 20, 1975. The defendant remained in the 90th Precinct for about an hour and a half, during which time he was neither handcuffed nor threatened. At no time did he express a desire to leave. The defendant was not, however, apprised of his rights, in clear violation of the dictates of *Miranda v Arizona* (384 US 436). The People concede that this renders the inculpatory statements made to Detective Brocato inadmissible. Following his interrogation at the 90th Precinct, Detective Martin transported the defendant to the 67th Precinct, where the latter attempted, without success, to identify an accomplice from mugshots. Later, at or about 2:00 P.M., he was transported to the 77th Precinct, where Detective Martin placed the defendant in an office and called Assistant District Attorney Marshak. The latter arrived at or about 5:00 P.M. and informed the defendant of his constitutional rights. Glover thereupon waived those rights, agreed to answer his questions, and gave the assistant an incriminating statement. During the period between 2:00 P.M. and 5:00 P.M., the defendant was not interrogated or physically restrained in any way. He was not, however, free to leave. On these facts, adduced without contradiction at the *Huntley* hearing, Criminal Term suppressed the statement on the ground, *inter alia,* that the defendant had been subjected to continuous custodial interrogation beginning at the 90th Precinct; that, since the defendant had not been apprised of his rights at the outset, the subsequent *Miranda* warnings were' insufficient to overcome the effect of the continuous interrogation; and that, under the authority of *Westover v United States* (384 US 436) and *People v Chapple* (38 NY2d 112), the defendant's purported waiver was not knowingly and intelligently made. The People appeal pursuant to CPL 450.50 (subd 1). In our opinion, the facts

in *Westover* and *Chapple* are clearly distinguishable from those at bar. Indeed, the Justice presiding at Criminal Term appears to have misapprehended the significance of the statement in *Chapple* that "Warnings, to be effective under the combined holdings in *Miranda* and *Westover,* must *precede* the subjection of a defendant to questioning. Later is too late, *unless there is such a definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning*" (*People v Chapple, supra,* p 115 [emphasis supplied]). In a similar vein, the Supreme Court of the United States held in *Westover* that where continuous questioning occurs *between* two statements, and where the second statement (given with the benefit of *Miranda* warnings) occurs without the defendant's being removed both in time and place from the surroundings of the first (obtained *without* the benefit of those warnings), the second statement may not be admitted *(Westover v United States, supra,* pp 494-497). In the case at bar, the two interrogations were conducted during the same day. More importantly, however, they were conducted at different locations, by different interrogators, and were separated by a time span of approximately three hours. During that hiatus the defendant was left completely alone in an unlocked office, and was therefore placed in a position where he could reflect fully and freely both on his situation and how he wished to proceed. He was not spoken to, threatened or handcuffed. Moreover, he never complained or expressed any desire to leave. Under these circumstances, the facts at bar more closely resemble those in *People v Tanner* (36 AD2d 690, affd 30 NY2d 102), wherein we upheld the admissibility of a confession given to an Assistant District Attorney with the benefit of *Miranda* warnings, but less than two hours after an invalid confession had been elicited from the defendant without such warnings. In affirming, Judge Bergan, writing for an unanimous Court of Appeals, noted (p 106): "Whether an accused believes himself so committed by a prior statement that he feels bound to make another, depends on his state of mind which is a fact[ual] question." The defendant at bar did not testify at the *Huntley* hearing. There is, therefore, no basis in fact for concluding that the subsequent statement was the illegal fruit of the first (see *United States v Bayer,* 331 US 532, 540-541; *Lyons v Oklahoma,* 322 US 596; cf. *Harney v United States,* 407 F2d 586; *Evans v United States,* 375 F2d 355). Gulotta, P. J., Martuscello and Latham, JJ., concur; Margett, J., dissents and votes to affirm the order insofar as it is appealed from, with the following memorandum, in which O'Connor, J., concurs: I would affirm on the authority of *People v Chapple* (38 NY2d 112). While the majority recognizes the rule in that case (p 115), that later warnings are too late "unless there is such a definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning", it has overlooked the cases cited in support of the rule. Thus, in *Harney v United States* (407 F2d 586), defendant's second confession was ruled inadmissible despite adequate warnings upon the following facts: Defendant's first confession was made late in the morning at the police station to a detective who had given him inadequate warnings. Sometime before noon defendant was placed in a cell where he had lunch and stayed for two or three hours. An agent of the Federal Bureau of Investigation interrogated defendant from 3:40 P.M. on and obtained the "second" confession. Despite the fact that defendant had apparently been left alone for three hours or so, and despite the fact that the second confession was obtained by a different interrogator, the statement made to the FBI agent was ruled inadmissible. In *Evans v*

*United States* (375 F2d 355), another of the cases relied on in *Chapple,* the second confession was suppressed despite the fact that three days had elapsed between the time that a detective had obtained the first (invalid) confession at police headquarters, and the time of the second confession, which was made to an investigator at the city jail. The court held that the second confession could only have been valid if defendant had been removed *both in time and place* from his original surroundings. The difference between police headquarters and the city jail was held not to be meaningful (p 360, n 4): "Evans was on both occasions a prisoner and the atmosphere on April 11th was no different than it was on April 8th." In my view there was no meaningful change of circumstances between the noon and 5:00 P.M. confessions. The devastating effect of the earlier confession could not be negated by a mere transfer from one precinct to another, or by the fact that defendant was permitted several undisturbed hours to ponder his situation. Accordingly, the 5:00 P.M. confession was properly suppressed.