■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROXANN M. GONZALEZ, Appellant.—Appeal from a judgment of the County Court of Chemung County, rendered September 23, 1977, convicting defendant upon her plea of guilty of the crime of escape in the first degree. On the night of February 8, 1977, defendant's husband escaped from the Chemung County Jail in Elmira, New York. Later that same evening defendant and her sister Pam attended a basketball game which ended at about 10:00 P.M. and then proceeded to St. Joseph's Hospital to bring cigarettes to a friend. As defendant exited from a bathroom at the hospital, she was met by a policeman who directed her to come with him, and outside of the hospital she and her sister were locked in the rear seat of a police car and driven to the Elmira Police Station. Upon her arrival at the station, defendant was questioned concerning her husband's whereabouts for about 20 minutes, at which point she was advised of her *Miranda* rights for the first time and stated that she did not need a lawyer because she had nothing to say.

Nonetheless, the questioning of defendant by various police officers continued until 1:45 A.M. on the following morning when defendant signed an inculpatory statement and was thereupon arrested and charged with promoting prison contraband in the first degree. With these circumstances prevailing, defendant was subsequently indicted by the February 1977 Term of the Chemung County Grand Jury for the crimes of escape in the first degree, promoting prison contraband in the first degree and criminal possession of a weapon in the fourth degree, and she moved pursuant to CPL 710.20 (subd 3) for an order suppressing the use at her trial of the inculpatory statement which she had given to the police. Following a *Huntley* hearing, this motion was denied by the Chemung County Court, and defendant then pleaded guilty to escape in the first degree in full satisfaction of the indictment and was sentenced to a term of five years' probation. Seeking a reversal of her conviction, defendant contends on this appeal that the order denying her suppression motion must be reversed and her guilty plea must be vacated, and we agree. Even assuming *arguendo* that defendant was adequately advised of her *Miranda* rights, a doubtful proposition in view of the 20 minutes of interrogation to which defendant was subjected prior to being given her rights (see *People v Chapple,* 38 NY2d 112), her inculpatory statement must be suppressed because of the circumstances surrounding her detention by the police. Clearly, her liberty of movement was significantly interrupted as a result of the police action so that she was seized within the meaning of the Fourth Amendment to the United States Constitution *(Terry v Ohio,* 392 US 1; *People v Boodle,* 47 NY2d 398; *People v Cantor,* 36 NY2d 106), and her detention "was in important respects indistinguishable from a traditional arrest" *(Dunaway v New York,* 442 US 200, 212). "Clearly, statments obtained by exploitation of unlawful police conduct or detention must be suppressed, for their use in evidence under such circumstances violates the Fourth Amendment" *(People v Misuis,* 47 NY2d 979, 981, citing *Dunaway v New York, supra),* and the People had the burden of justifying the actions of the police in seizing the defendant (see *People v Wise,* 46 NY2d 321, 329). The officers who seized defendant did not testify and the People offered no other proof that the police knew, at the time defendant was seized, of any connection between defendant and the crime being investigated other than defendant's marital relationship with the jail escapee. Accordingly, there was plainly an absence of probable cause to justify the seizure which was, therefore, unlawful *(Dunaway v New York, supra),* and the taint of the illegal seizure was not removed from the subsequent inculpatory statement because defendant was advised of her *Miranda* rights (see *Brown v Illinois,* 422 US 590). Such being the case, the statement which was obtained from defendant by the police as a direct result of the seizure and in close temporal proximity thereto without any intervening circumstances must be suppressed and the resultant guilty plea must be vacated. Judgment reversed, on the law and the facts, guilty plea vacated, suppression motion granted, and matter remitted to the County Court of Chemung County for further proceedings not inconsistent herewith. Mahoney, P. J., Main and Mikoll, JJ., concur.

Greenblott and Staley, Jr., JJ., dissent and vote to affirm in the following memorandum by Staley, Jr., J. Staley, Jr., J. (dissenting). We respectfully dissent and vote to affirm. At the *Huntley* hearing, defendant testified that she was accompanied by police officers in a squad car to the police station. Once she was inside the police station, the officers asked the defendant where her husband could be found. She stated that she did not know his

whereabouts. The officers questioned her as to the whereabouts of her husband for approximately 20 minutes before they read her the *Miranda* warnings. The questions were repetitious and confined to the inquiry of defendant's knowledge of "where her husband was". After having been read her rights, she said she did not need a lawyer because she had nothing to say. Detective Miller, who had been assigned to interrogate defendant, testified he gave defendant her *Miranda* warnings before he talked to her, and that he completed the written rights waiver form which is page one of the statement, and that defendant read it and signed it. Miller testified that defendant did not tell him she had "nothing to say", and further that she did not request that the questioning cease. The questioning was pursued to approximately 1:45 A.M. on February 9, 1979 when defendant signed the inculpatory statement. Miller testified that after the statement was taken, she talked to her friends for quite awhile, and she was then placed under arrest. Defendant contends that the questioning by the police officers amounted to custodial interrogation without the proper safeguards of the *Miranda* warnings. It is conceded by defendant that within 20 minutes of her arrival at the police station, she was given the *Miranda* warnings, and that before Detective Miller questioned her, he orally advised her of her rights, and that she voluntarily signed a written waiver of rights. During the 20 minutes, defendant was repeatedly asked if she knew where her husband was, and her reply was "no", and she testified that she was not asked anything else. When she was advised of her rights and asked if she wanted an attorney, she replied "I don't need one. I don't have nothing to say." The trial court found that defendant was advised of her rights, waived them and voluntarily made the statement, and that she was not under any influence of fear produced by threats, coercion or force. When defendant first arrived at the police station, the focus of questioning by police officers was on the whereabouts of Antonio Gonzalez and not on defendant as a suspect in the escape of her husband. The questions asked by the police were not intended to elicit self incriminating answers from defendant, but instead, were asked to obtain any relevant information which could aid in the apprehension of the escapee from the Chemung County Jail. Thus, because the questioning was investigatory in nature, and not accusatory at this early state, the defendant did not, at that time, undergo custodial interrogation. "When the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate" *(Escobedo v Illinois,* 378 US 478, 492). Thus, a person is entitled to invoke his rights where the investigation is no longer a general inquiry to an unsolved crime, but has begun to focus on a particular suspect who has been taken into custody and asked questions which seek to elicit incriminating statements. Here, the custodial interrogation began when Detective Miller began his detailed questioning of defendant after she had signed the waiver of rights statement. Defendant contends that after the interrogation began, she told Detective Miller that she did not want a lawyer, and had nothing to say, and such statement constituted a declaration of her right to remain silent. Defendant continued to answer questions willingly, and at no time did she affirmatively request to remain silent. In addition, Detective Miller testified that defendant did not tell him that "she had nothing to say", and that she did not say that she wished the questioning to cease. The trial court determined the issue of defendant's contention that her right to remain silent was violated as an issue of credibility in favor of Detective Miller's version. Such determination is based upon credibility, and should not be disturbed *(People v Fox,* 65

AD2d 880; *People v Middleton,* 50 AD2d 1040). The order denying the motion for suppression of defendant's statement should be affirmed.