OPINION OF THE COURT
Herbert A. Posner, J.
A Huntley hearing (15 NY2d 72) was held before me on April 19,1983 on the defendant’s motion to suppress statements. The only witness who testified at this hearing was Detective Joseph Ebert, who was called by the People. Based on the evidence adduced at the hearing, the court made the following findings of fact and conclusions of law.
FINDINGS OF FACT
On January 20, 1983, at about 8:45 a.m., Detective Joseph Ebert of the career criminal investigating unit was advised by Police Officer Tapler of the 110th anticrime unit that the defendant, Tino Haverman, had been arrested on robbery charges. Officer Tapler told the detective that he placed Haverman under arrest shortly after 4:00 a.m. in the security office at 97-30 57th Avenue, Lefrak City, where the defendant had been detained by security guards on the complaint of one Arthur Border that Haver *981 man had just beaten and robbed him. Officer Tapler also told Detective Ebert that he had advised Haverman of his rights when he arrested him in the security office.
One of the functions of police officers assigned to the career criminal investigating unit is to interview persons arrested on serious charges. For that purpose, at about 9:15 a.m., Detective Ebert removed Haverman from the holding pen on the first floor of the 112th Precinct and took him to the detective’s office on the second floor. There, he advised the defendant of his rights by reading him the Miranda warnings (384 US 436) from a form which was introduced into evidence at the hearing. The defendant acknowledged by answering “yes”, that he understood, as each of his rights was read to him, and again responded “yes” when asked if he wished to answer questions without an attorney present. The defendant also signed the form from which his rights were read to him.
Detective Ebert then asked Haverman what had happened and the defendant made a statement in which he admitted that he had beaten and robbed the complainant at about 4:00 a.m. in the lobby of the building at 97-30 57th Avenue. The officer wrote the statement out in longhand, as the defendant made it, and then read it back to Haverman who signed it. This statement, which was also signed by Detective Ebert, was introduced into evidence at the hearing. The defendant was not handcuffed during the interview and there was no one else present in the room where it was conducted.
CONCLUSIONS OF LAW
According to the People’s own witness, the statement of the defendant, which is the subject of the instant motion to suppress, was made during an interview that took place more than five hours after the defendant was placed under arrest. Nevertheless, the only witness produced by the People at the Huntley hearing was the police detective who conducted the interview. Neither the arresting officer nor any other witness with knowledge of what transpired during the more than five hours’ detention, which followed the defendant’s arrest and preceded his alleged statement to the detective, was produced by the People at the hearing. *982 Thus, an issue was raised as to whether the People satisfied their burden of proof.
It is well settled that at a Huntley hearing, the burden is upon the People to prove beyond a reasonable doubt the voluntariness of the defendant’s statements. (People v Anderson, 42 NY2d 35, 38-39; People v Huntley, 15 NY2d 72, 78, supra.) This includes establishing a knowing and intelligent waiver by the defendant of his constitutional rights. (See People v Graham, 55 NY2d 144; People v Campbell, 81 AD2d 300.) In this connection, “the fact of lengthy interrogation or incommunicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights.” (Miranda v Arizona, 384 US 436, 476, supra.)
A majority of the United States Supreme Court, in Westover v United States (384 US 494), which was decided simultaneously with Miranda (supra), agreed that they could not find that Westover knowingly and intelligently waived his constitutional right to remain silent and to consult counsel before making a statement to FBI agents, although there was evidence that they had given him warnings before the outset of their interview. In that case, the petitioner, Westover, had been held in custody for 14 hours, without any warnings, during which time he was interrogated at length by local police and there was no evidence that he had waived his rights before he made the statement to the FBI agents, following several more hours of questioning by them in the local police headquarters. In deciding that the statement could not be used against Westover at trial, the court stated (384 US, at pp 496-497): “We do not suggest that law enforcement authorities are precluded from questioning any individual who has been held for a period of time by other authorities and interrogated by them without appropriate warnings. A different case would be presented if an accused were taken into custody by the second authority, removed both in time and place from his original surroundings, and then adequately advised of his rights and given an opportunity to exercise them. But here the FBI interrogation was conducted immediately following the state interrogation in the same police station — in the same compelling surroundings. *983 Thus, in obtaining a confession from Westover the federal authorities were the beneficiaries of the pressure applied by the local in-custody interrogation. In these circumstances the giving of warnings alone was not sufficient to protect the privilege.”
In turn, the New York Court of Appeals in People v Chappie (38 NY2d 112, 115) acknowledged that: “Warnings, to be effective under the combined holdings in Miranda and Westover, must precede the subjection of a defendant to questioning. Later is too late, unless there is such a definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning.” The officer in the Chappie case admitted that he stopped the defendant, who was walking on a public roadway, ordered him into the police car, questioned him about several burglaries in the area and drove him to the site of the most recent one. Not until the defendant had admitted that burglary and showed where he had broken into the building, did the officer give him his Miranda warnings and continue the interrogation which elicited admissions of other burglaries. The court held (supra, p 115) that: “Unlike theories which require examination of a defendant’s testimony as to his state of mind and, thus, an assessment of his credibility, the Westover approach may be based on an assessment of external events. We find that the testimony of Officer Luck himself, in the case before us, supplies ample basis for the conclusion that Chappie was subjected to such a continuous interrogation that the Miranda warnings administered at the site of the burglary were insufficient to protect his rights. Given that insufficiency, his later confessions must be suppressed.”
Unlike the Westover and Chapple cases, there was no evidence adduced at the hearing conducted in this case which indicated that the defendant had been subjected to “lengthy interrogation or incommunicado incarceration” or deprived of any rights before the interview with Detective Ebert. The five-hour period that elapsed between the defendant’s arrest and the interview was consistent with normal booking procedures following an arrest at four o’clock in the morning. There was no evidence that the *984 defendant had not been given his rights and afforded an opportunity to make a phone call or that he had been questioned during that time.
This court does not find that at a Huntley hearing, the People must initially produce all police personnel with whom the defendant was in contact before he made the statement in order to disprove any possibility of police misconduct. Such a requirement would unnecessarily protract these hearings and detain police officers in courtrooms, who are needed in the community. Unless there is some indication of prior improper police conduct, the People will have sustained their burden of proof at a Huntley hearing by establishing that the defendant was advised of his rights and waived them before he made the statement. (See People v Gonzalez, 55 NY2d 720; People v McGregor, 84 AD2d 610; People v Eccleston, 78 AD2d 536.) While in some instances, this may require the defendant to come forward with evidence or allegations of misconduct, this will not be unduly burdensome. Unlike police impropriety in conducting an identification procedure or making a search and seizure, the fact that improper police conduct preceded the Miranda warnings will be known to the defendant and can be easily placed in issue by him. Of course, the ultimate burden of proof will remain upon the People.
Based upon the evidence presented at the Huntley hearing in this case, the court finds that before the defendant was interviewed by Detective Ebert, he was given the warnings set out in Miranda v Arizona (384 US 436, supra) in a full, clear and forthright manner and that the defendant understood those rights and so acknowledged. The court further finds that the defendant knowingly and voluntarily waived those rights and made a statement to Detective Ebert without any coercion or intimidation and without any promise or statement which. might have caused the defendant to falsely incriminate himself. Accordingly, the court finds that the People have sustained their burden of proving the voluntariness of defendant’s statements to Detective Ebert and the motion to suppress those statements is therefore denied.