■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TYRONE JAMES, Appellant. [676 NYS2d 628] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (George, J.), rendered March 19, 1996, convicting him of murder in the second degree (two counts), criminal possession of a weapon in the second degree, and criminal possession of a

weapon in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Juviler, J.), of that branch of the defendant's omnibus motion which was to suppress his statement to law enforcement officials.

Ordered that the judgment is affirmed.

On February 20, 1995, at approximately 4:00 P.M., while the defendant was in custody on an unrelated matter, Detective Michael Paul questioned him in an interview room regarding the subject homicides. The hearing court found that the defendant was not advised of his Fifth Amendment rights until approximately 10:10 P.M., and suppressed all statements made prior to that time. The hearing court also suppressed a written statement which the defendant signed at approximately 10:15 P.M., and a diagram of the murder scene which the defendant drew and signed at approximately 11:15 P.M., on the ground that they were insufficiently attenuated from the earlier questioning without the benefit of Fifth Amendment warnings.

Nevertheless, the hearing court refused to suppress a videotaped statement which the defendant subsequently made to an Assistant District Attorney. The hearing testimony indicated that after the defendant completed and signed the diagram at approximately 11:15 P.M., he agreed to make a videotaped statement for the District Attorney's office. At 2:38 A.M., an Assistant District Attorney advised the defendant of his Fifth Amendment rights and took the defendant's videotaped statement in the lineup room. In the intervening period, the defendant was left alone in the interview room, without handcuffs.

Based on this testimony, the hearing court found that the videotaped statement was attenuated from the prior statements. The court noted that the videotaped statement was taken more than three hours after completing the diagram in a different location, and conducted by a different person after the defendant was advised of his Fifth Amendment rights a second time. The court found that these were significant intervening events which separated the videotaped statement from the suppressed statements. The court also found no evidence that the defendant felt so committed to his earlier statements that the "cat was out of the bag".

The defendant argues that his videotaped statement was tainted by the earlier interrogation without the benefit of Fifth Amendment warnings. We disagree. Whether a statement made after a waiver of Fifth Amendment rights is tainted by earlier questioning without the benefit of Fifth Amendment

warnings presents a question of fact (*see, e.g., People v Basti-das,* 67 NY2d 1006; *People v Tanner,* 30 NY2d 102, 106). Here, the evidence supports the hearing court's determination that the videotaped statement followed a pronounced break in the interrogation which attenuated any taint from the earlier questioning (*see, People v Nisbett,* 225 AD2d 801; *People v Salami,* 197 AD2d 715; *People v McIntyre,* 138 AD2d 634; *cf., People v Bethea,* 67 NY2d 364; *People v Chapple,* 38 NY2d 112). Moreover, the court aptly noted that there was no evidence indicating that the defendant felt so committed by his prior statements that he felt bound to make another (*see, People v Tanner, supra*), and the use of the suppressed diagram during the course of the videotaped questioning does not compel such a finding. Under the circumstances, it cannot be said, as a matter of law, that the videotaped statement was given in violation of the defendant's right against compulsory self-incrimination (*see, People v Bastidas, supra*).

The defendant's contention that the trial court erred when it failed to dismiss several of the jurors during the trial is unpreserved for appellate review (*see,* CPL 470.05 [2]; *People v Jackson,* 209 AD2d 247; *People v Pagan,* 177 AD2d 604).

The defendant's sentence was not excessive (*see, People v Suitte,* 90 AD2d 80). Bracken, J. P., Copertino and Joy, JJ., concur.

McGinity, J., dissents and votes to reverse the judgment, grant that branch of the defendant's omnibus motion which was to suppress his videotaped statement to law enforcement officials and order a new trial with the following memorandum: I respectfully dissent. The defendant was arrested for an alleged and unrelated street robbery on February 20, 1995, and brought to the precinct for questioning. Upon his arrival, Detective Michael Paul, who was not involved in the initial arrest and who made a practice of routinely debriefing all those held at the precinct to gather street intelligence on unsolved crimes in the area interviewed the defendant. Detective Paul was particularly interested in obtaining information regarding an unsolved double homicide at a bodega on December 13, 1994.

Detective Paul took the defendant out of the precinct holding cell and took him into a separate interviewing room. It was then about 4:00 in the afternoon. Detective Paul introduced himself as a homicide detective and asked the defendant if he knew about something that happened on Washington Avenue. The defendant told him that he had been buying "weed" across the street from a bodega on that street when shots came from the bodega. As the conversation progressed, the defendant re-

vealed that one of the victims was shot near the position in which he was found lying on the floor of the store. From that piece of information, the detective concluded that the defendant had been inside the store during the robbery.

At that point, Detective Paul testified that he stopped the conversation and read the defendant his rights from the *Miranda* card. It was then about 4:45 in the afternoon. He testified that he did not have the defendant sign the *Miranda* card because he did not want to interrupt the conversation.

The defendant then proceeded to involve himself in the planned robbery of the bodega, indicating that his role was to distract the employee at the cash register while the three other participants committed the robbery. Detective Paul readministered the *Miranda* warnings to the defendant at 10:10 P.M. and had him sign the *Miranda* card. The detective prepared a handwritten statement summarizing the defendant's comments, which he read to the defendant who signed it. The detective then asked the defendant to sketch a diagram of the bodega with the names and locations of the persons in the bodega on December 13, 1994. The diagram was completed at 11:15 P.M. Detective Paul then called an Assistant District Attorney to take a videotaped statement from the defendant who was again given his *Miranda* rights by the Assistant District Attorney at 2:38 A.M., February 21, 1995.

The hearing court suppressed the oral and written statements as well as the diagram, concluding that the People did not prove beyond a reasonable doubt that the detective gave the defendant his *Miranda* warnings before he made oral incriminating statements and thus suppressed oral statements from 4:00 P.M. to 5:30 P.M. The hearing court found that although *Miranda* warnings were given after a full written statement was obtained at 10:15 P.M., there was no attenuation and thus suppressed the written statement. The court also found that the diagram prepared by the defendant and completed at 11:15 P.M. should be suppressed because there was no attenuation between it and the earlier questioning. Regarding the videotaped statement, however, the hearing court stated:

"The Court finds beyond a reasonable doubt that the video statement was attenuated. And also finds as a matter of applicable law that it was attenuated.

"The last questioning ended at 11:15. There was a definite pronounced break of more than three hours before the video interview. Again during that time, the defendant was alone and there was no continuous questioning. Indeed no questioning at all * * *

"These are all significant intervening events which separate the suppressed statements from the video statement, and which attenuate the connection between the suppressed statements and the video statements.

"The court finds that when the video statement began, and the Miranda Warnings were administered the defendant had returned to the status of someone who was not under the influence of questioning."

In order to determine whether there was an attenuation between the oral confession which commenced at 5:00 to 5:30 P.M. on February 20, 1995, when the court found no *Miranda* warnings were given and the conclusion of the confession after which *Miranda* warnings were given at 10:15 P.M. on February 20, 1995, and the diagram drawn by defendant and completed at 11:15 P.M. and the video statement given after *Miranda* warnings at 2:38 A.M. on February 21, 1998, this case must be examined in light of the Court of Appeals decision in *People v Bethea* (67 NY2d 364), which reaffirmed the principle enunciated in *People v Chapple* (38 NY2d 112), governing the admissibility of statements as a result of continuous custodial interrogation.

As a matter of State constitutional law, the Court of Appeals has held that unless there is "a definite, pronounced break in the interrogation * * * the defendant may [not] be said to have returned, in effect, to the status of one who is not under the influence of questioning" (*People v Chapple, supra,* at 115).

The basic question to be resolved is whether a period of three to three and one-half hours after cessation of questioning by Detective Paul was sufficient attenuation to return a seventeen-year-old defendant "to the status of one who is not under the influence of questioning" (*People v Chapple, supra,* at 115). The Webster's Third New International Dictionary lists a definition of attenuation as tapering gradually, to make thin.

The hearing court, after suppressing the oral and written confessions and the diagram, found the video statement admissible because there was a period of three and one-half hours in between which attenuated the position of the defendant.

This is a quantum leap—a stretch—not an attenuation. One would have to be quite naive to believe that the defendant was assured in his own mind that he was in the same position he was at 4:00 P.M. when he entered the precinct, before he made two incriminating statements and drew a diagram. The defendant's video statement was connected to and not attenuated from his prior statement by use of the diagram—used by both Detective Paul and later the Assistant District Attorney.

If the defendant did not believe at that point the proverbial "cat was out of the bag," then that statement has no meaning. This is particularly so since the Assistant District Attorney used the defendant's own diagram during the video questioning.

The video statement should have been suppressed as was the diagram. The video statement was the fruit of the poisonous tree. The People could produce no other evidence of the defendant's participation in this crime other than his statement so that the admission of the challenged video statement was not harmless error. None of the other alleged participants in this crime have been apprehended or even fully identified and no eyewitnesses have been produced.

Unlike the situations in *People v Nisbett* (225 AD2d 801), *People v Salami* (197 AD2d 715), and *People v McIntyre* (138 AD2d 634), the circumstances of this case did not constitute such a definite, pronounced break sufficient to remove the taint of the initial confession, particularly where a diagram, subsequently suppressed, was referred to in the videotaped statement. Moreover, as noted, there was no other evidence linking the defendant to the commission of the crime.

The conviction should be reversed, the video statement suppressed and a new trial ordered.