■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANIEL RODRIGUEZ, Appellant. [17 NYS3d 753]—

Appeal by the defendant from a judgment of the Supreme

Court, Kings County (Firetog, J.), rendered May 7, 2012, convicting him of murder in the second degree, assault in the first degree, and assault in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress a videotaped statement he made to law enforcement officials.

Ordered that the judgment is affirmed.

The defendant was convicted, after a jury trial, of murder in the second degree, assault in the first degree, and assault in the second degree after he acted in concert with codefendant Devone Sanders to set fire to a residential building, causing the death of one victim and injuring two others.

On February 22, 2010, at approximately 10:50 p.m., the defendant, who was in custody, waived his *Miranda* rights (*see Miranda v Arizona*, 384 US 436 [1966]) and gave an oral statement to Detectives Rodriguez and Belissimo. After giving the oral statement, the defendant agreed to make a videotaped statement. The next morning, at 5:47 a.m., the defendant answered questions from Assistant District Attorney DiIngines, in the presence of Detective Rodriguez, while being videotaped. After five minutes, the defendant invoked his right to remain silent. At 8:30 a.m., Detectives Rodriguez and Belissimo returned to the interview room, and, without giving the defendant further *Miranda* warnings, showed the defendant a videotaped statement given earlier by another suspect which inculpated the defendant. After showing the defendant the videotaped statement, Detective Rodriguez questioned the defendant for 10 to 15 minutes (hereinafter the pre-9 a.m. questioning), and then asked the defendant to reconsider making a videotaped statement, and the defendant agreed to do so. That interrogation ended at 9:00 a.m. At 11:00 a.m., the Assistant District Attorney, in the presence of Detective Rodriguez, re-administered the *Miranda* warnings, and the defendant gave a full videotaped statement (hereinafter the second videotaped statement).

On appeal, the defendant contends that the hearing court erred in refusing to suppress the second videotaped statement because that statement was tainted by the pre-9 a.m. questioning.

"[W]here an improper, unwarned statement gives rise to a subsequent Mirandized statement as part of a 'single continuous chain of events,' there is inadequate assurance that the *Miranda* warnings were effective in protecting a defendant's rights, and the warned statement must also be suppressed"

(*People v Paulman*, 5 NY3d 122, 130 [2005], quoting *People v Chapple*, 38 NY2d 112, 114 [1975]). In determining whether a subsequent statement made after *Miranda* warnings were given was part of a "single continuous chain of events," the court considers various factors including "whether the same police personnel were present and involved in eliciting each statement; whether there was a change in the location or nature of the interrogation; the circumstances surrounding the *Miranda* violation, such as the extent of the improper questioning; and whether, prior to the *Miranda* violation, defendant had indicated a willingness to speak to police" (*People v Paulman*, 5 NY3d at 130-131). The purpose of the inquiry is to determine whether there was a "definite, pronounced break in questioning sufficient to return the defendant to the status of one who is not under the influence of questioning" (*People v Sedunova*, 83 AD3d 965, 967 [2011]; *see People v Celleri*, 29 AD3d 707, 708 [2006]; *People v Johnson*, 79 AD2d 617, 618 [1980]; *see also People v Paulman*, 5 NY3d at 131; *People v Chapple*, 38 NY2d at 115).

Here, the statement made by the defendant during the pre-9 a.m. questioning, which the Supreme Court suppressed, and the second videotaped statement were part of a single continuous chain of events inasmuch as during the pre-9 a.m. questioning, Detective Rodriguez asked the defendant to make a further videotaped statement when he interrogated the defendant in violation of his constitutional rights. Therefore, during the two-hour break, the defendant was never returned to the status of one who was not under the influence of questioning (*see People v Celleri*, 29 AD3d at 708), but was anticipating the arrival of the Assistant District Attorney to continue the interrogation. Moreover, Detective Rodriguez, who elicited the 10-to15-minute statement the defendant made during the pre-9 a.m. questioning without having been again given his *Miranda* warnings, was present during the subsequent videotaped interrogation, and both interrogations were conducted in the same interview room (*see People v Paulman*, 5 NY3d at 130-131; *People v Celleri*, 29 AD3d at 708). Considering these factors and the nature and extent of the *Miranda* violation, we cannot conclude that there was a definite, pronounced break between the defendant's first and second videotaped statements sufficient to return the defendant to the status of one who was not under the influence of questioning (*see People v Chapple*, 38 NY2d at 115; *People v Sedunova*, 83 AD3d at 967; *People v Celleri*, 29 AD3d at 708).

Accordingly, the Supreme Court should have suppressed the defendant's second videotaped statement.

However, reversal is not required since the People presented overwhelming proof of the defendant's guilt, including the defendant's prior untainted statements, his codefendant's trial testimony, and two surveillance videos corroborating the codefendant's account of the crimes. There is no reasonable possibility that the admission of the second videotaped statement affected the verdict (*see People v Paulman*, 5 NY3d at 134; *People v Celleri*, 29 AD3d at 708; *People v Pearson*, 20 AD3d 575, 577 [2005]).

The defendant's contention regarding the Supreme Court's *Sandoval* ruling (*see People v Sandoval*, 34 NY2d 371 [1974]), is unpreserved for appellate review (*see People v Mantock*, 117 AD3d 753 [2014]) and, in any event, is without merit (*see People v Monk*, 50 AD3d 925, 926 [2008]).

The defendant's request for a missing witness charge was properly denied since the testimony of the uncalled witness would have been merely cumulative (*see People v Smith*, 49 AD3d 904, 905-906 [2008]; *People v Miller*, 282 AD2d 691 [2001]).

Contrary to the defendant's contention, he has not demonstrated that his trial counsel was ineffective under either federal or state constitutional standards (*see Strickland v Washington*, 466 US 668, 687 [1984]; *People v Caban*, 5 NY3d 143 [2005]; *People v Baldi*, 54 NY2d 137 [1981]; *People v Salcedo*, 150 AD2d 624 [1989]). The record establishes that defense counsel provided meaningful representation as a whole (*see People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Cruz*, 127 AD3d 987 [2015]; *People v Anderson*, 24 AD3d 460 [2005]). Rivera, J.P., Roman, LaSalle and Barros, JJ., concur.