People v Dorvil (2019 NY Slip Op 06409)





People v Dorvil


2019 NY Slip Op 06409


Decided on August 28, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 28, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
RUTH C. BALKIN
COLLEEN D. DUFFY
FRANCESCA E. CONNOLLY, JJ.


2017-05501
 (Ind. No. 1759/16)

[*1]The People of the State of New York, respondent,
v
Wesnel Dorvil, appellant.


Paul Skip Laisure, New York, NY (Jonathan Schoepp-Wong and Grace DiLaura of counsel), for appellant.
John M. Ryan, Acting District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, Nancy Fitzpatrick Talcott, and Mariana Zelig of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Lenora Gerald, J.), rendered April 4, 2017, convicting him of robbery in the first degree, robbery in the second degree (two counts), grand larceny in the fourth degree, and criminal possession of stolen property in the fourth degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Ronald D. Hollie, J.), of that branch of the defendant's omnibus motion which was to suppress statements he made to law enforcement officials.
ORDERED that the judgment is reversed, on the law, that branch of the defendant's omnibus motion which was to suppress statements he made to law enforcement officials is granted, and a new trial is ordered.
The complainant was robbed by two unknown assailants while walking down a street with Karina Espinal. During the ensuing police investigation, Espinal admitted that she had participated in the robbery and implicated the defendant as an accomplice with whom she planned the robbery. The defendant was convicted, upon a jury verdict, of robbery in the first degree, robbery in the second degree (two counts), grand larceny in the fourth degree, and criminal possession of stolen property in the fourth degree.
Viewing the evidence in a light most favorable to the prosecution (see People v Contes, 60 NY2d 620), the People adduced legally sufficient evidence of the physical injury element of robbery in the second degree as charged under count three of the indictment (see Penal Law § 160.10[2][a]). Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt on that count was not against the weight of the evidence (see CPL 470.15[5]).
Nevertheless, the Supreme Court should have suppressed the defendant's videotaped interrogation. As an " absolute prerequisite to interrogation,'" individuals "taken into custody by law enforcement authorities . . . must be adequately and effectively apprised of [their] rights' safeguarded by the Fifth Amendment privilege against self-incrimination" (People v Dunbar, 24 NY3d 304, 313-314, quoting Miranda v Arizona, 384 US 436, 467; see US Const Amend V; NY [*2]Const, art I, § 6). Interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect" (Rhode Island v Innis, 446 US 291, 301; see People v Paulman, 5 NY3d 122, 129). "Statements made in response to such police words or actions are inadmissible in the absence of Miranda warnings" (People v Crawford, 163 AD3d 986, 987; see People v Dunbar, 24 NY3d at 314).
Here, after the defendant was arrested and placed in an interview room at the police station, a detective asked the defendant a series of questions without administering Miranda warnings. Among other things, these questions concerned the defendant's employment, the length of his tenure at his current job, his job responsibilities, the length of time he had lived at his current address, and other places where he and his family had lived. After this questioning, the detective told the defendant: "I'm [going] to read [the] Miranda rights to you, just to get it out of the way." The detective then administered the Miranda warnings, and the defendant waived his rights.
Contrary to the People's contention, the pre-Miranda questioning was not mere "small talk," but, rather, interrogation (see People v Crawford, 163 AD3d at 987; People v Dawson, 130 AD3d 750; People v Tavares-Nunez, 87 AD3d 1171, 1172-1173). In particular, the detective was aware, when he questioned the defendant about his employment, that Espinal claimed to know the defendant from previously working with him at a bar. Indeed, when the questioning resumed after administration of Miranda warnings, it concerned the defendant's work history at bars at or around the time of the incident. Notably, the People assert that they are not claiming that the pedigree exception to the Miranda rule is applicable, and, in any event, the detective admitted at the suppression hearing that, at the time of the interview, he had already recorded the defendant's pedigree information and that such information does not include an individual's employment (see People v Dawson, 130 AD3d at 752). Under these circumstances, the defendant was improperly subjected to custodial interrogation without being advised of his Miranda rights, requiring suppression of those statements (see People v Crawford, 163 AD3d at 987).
Moreover, "where an improper, unwarned statement gives rise to a subsequent Mirandized statement as part of a single continuous chain of events,' there is inadequate assurance that the Miranda warnings were effective in protecting a defendant's rights, and the warned statement must also be suppressed" (People v Paulman, 5 NY3d at 130, quoting People v Chapple, 38 NY2d 112, 114; see People v Bethea, 67 NY2d 364). Here, where there was no break in time between the pre-Miranda and post-Miranda questioning, no change of location, no change in the nature of the interrogation, and no change of police personnel, it cannot be said that there was "such a definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning" (People v Chapple, 38 NY2d at 115; see People v Rodriguez, 132 AD3d 781, 782-783; People v Sedunova, 83 AD3d 965, 967). We further note that the videotaped interrogation, the entirety of which was played to the jury, included the defendant's invocation of his right to counsel. "[A] defendant's invocation of his [or her] right to counsel during custodial interrogation may not be used against him [or her] by the People as part of their case-in-chief" (People v Knowles, 42 AD3d 662, 665; see People v Von Werne, 41 NY2d 584, 587-588). Hence, that portion of the video was erroneously admitted on this ground as well.
Accordingly, the entire videotaped interrogation should have been suppressed. Moreover, the error was not harmless, since the evidence of guilt, without reference to the defendant's statements, was not overwhelming, and there was a reasonable possibility that the error might have contributed to the defendant's convictions (see generally People v Crimmins, 36 NY2d 230, 237).
Since we are remitting the matter to the Supreme Court, Queens County, for a new trial, we note that the court should have granted the defendant's request for a limiting instruction as to the proper use of statements made by Espinal to the defendant during a controlled phone call (see People v Harris, 19 NY3d 679, 686; People v Negrin, 140 AD3d 1192, 1193). As the statements were admitted for the nonhearsay purpose of providing context to the defendant's statements, the [*3]jury should have been instructed not to consider the statements for their truth (see People v Harris, 19 NY3d at 686; People v Negrin, 140 AD3d at 1193). Moreover, it was improper, during summation, for the prosecutor to rely on Espinal's statements for their truth.
In light of our determination, we need not reach the defendant's remaining contentions.
MASTRO, J.P., BALKIN, DUFFY and CONNOLLY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court