People v Savage (2023 NY Slip Op 05452)

People v Savage

2023 NY Slip Op 05452

Decided on October 26, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: October 26, 2023

Before: Kern, J.P., Moulton, Mendez, Higgitt, O'Neill Levy, JJ. 

Ind No. 1726/16 Appeal No. 681 Case No. 2019-3213 

[*1]The People of the State of New York, Respondent,
v
Roy Savage, Defendant-Appellant.

Twyla Carter, The Legal Aid Society, New York (Nao Terai of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (T. Charles Won of counsel), for respondent.

Judgment, Supreme Court, Bronx County (Margaret L. Clancy, J.), rendered October 16, 2018, convicting defendant, after a jury trial, of murder in the second degree, and sentencing him to a term of 25 years to life, unanimously reversed, on the law, the motion to suppress the second statement, the knife and the DNA evidence recovered from the knife granted, and the matter remanded for a new trial.
At the suppression hearing, defendant sought to suppress two videotaped statements. The first statement was made by defendant while being interrogated by police officers at the precinct in the morning of May 27, 2016, the day after the murder (Statement #1). The second statement was made by defendant to an Assistant District Attorney in a different room at the police station in the afternoon on that same day (Statement #2).
Testimony given at the suppression hearing established that police officers responded to defendant's 911 call on the evening of the murder, where he reported that he and his wife had been stabbed in a home invasion. Defendant was taken to the hospital to be treated for injuries to his hand and was brought to the precinct the following morning, unhandcuffed.
That morning, two police officers entered the room to take Statement #1. The officers asked defendant some initial questions about the incident and attempted to relate to defendant by discussing their frustrations with women. The officers then read defendant his Miranda rights. Thereafter, defendant asked the police officers whether he was being arrested and he was told that he was not. When the officers asked defendant whether he was willing to answer questions, defendant stated his concern that whatever he said could be used against him because Miranda warnings were already given. Instead of confirming that to be the truth, the police officers told the defendant that his statements would "not necessarily" be used against him but rather would be used to help him as he would benefit in court by confessing. They also minimized the consequences of defendant confessing, assuring defendant that "this doesn't have to be the end" but he had to "do the right thing."
Defendant then agreed to answer the officers' questions. He initially maintained his home invasion story, but the officers continued to press him. Defendant then admitted to stabbing his wife in self-defense after she got angry and attacked him. The officers continued to push for more information, including the location of the knife, which defendant eventually provided. Testimony given at the suppression hearing established that police officers subsequently retrieved the knife from the location described by defendant after which defendant was shown a photograph of the knife, which he confirmed was the knife in question.
Hours later, on that same day, an Assistant District Attorney took Statement #2 in a different room. She began by giving defendant Miranda warnings for the second time. Defendant then reiterated his account [*2]of how he stabbed his wife in self-defense, got dressed and went outside to hide the knife in a parking lot before calling 911.
Although the trial court properly suppressed Statement #1, it should also have suppressed Statement #2 along with the knife and DNA evidence recovered from the knife as fruit of the poisonous tree. "[W]here an improper, unwarned statement gives rise to a subsequent Mirandized statement as part of a 'single continuous chain of events,' there is inadequate assurance that the Miranda warnings were effective in protecting a defendant's rights, and the warned statement must also be suppressed" (People v Paulman, 5 NY3d 122, 130 [2005]). "To determine whether there is a 'single continuous chain of events,'" we may consider "a number of factors, including. . . the circumstances surrounding the Miranda violation. . . ." (id. at 130). "[E]ach case must be viewed on its unique facts" and "[t]he purpose of the inquiry is to assess where there was a sufficiently 'definite, pronounced break in the interrogation' to dissipate the taint from the Miranda violation" (id. at 131, quoting People v Chapple, 38 NY2d 112, 115 [1975]).
Under the unique circumstances of this case, Statement #2, along with the knife and DNA evidence recovered from the knife, should have been suppressed as there was not a sufficient break in the interrogation to dissipate the taint from the initial Miranda violation. This is not a case where defendant initially received improper warnings prior to giving Statement #1 and then later received proper warnings prior to giving Statement #2. Instead, defendant received complete and proper Miranda warnings prior to giving Statement #1, but they were undermined by the additional commentary and misleading statements made by the police officers (see generally People v Dunbar, 24 NY3d 304, 315-316 [2014], cert denied 575 US 1005 [2015]), thereby violating defendant's Miranda rights and requiring the suppression of Statement #1. Moreover, after the officers made the misleading statements, nothing was specifically done to correct any resulting misunderstanding to ensure that the defendant understood the import and effect of the Miranda warnings and that his statements could, and would, be used against him. This misunderstanding cannot be assumed to have simply dissipated after the Assistant District Attorney gave defendant the second Miranda warnings, even though the second warnings took place hours later and in a different room. As the second Miranda warnings did not dissipate the taint, they did not effectively protect defendant's rights. Although it "is not the business of the police or the courts" to "provid[e] a general legal education" (People v Williams, 62 NY2d 285, 289 [1984]), those institutions also cannot be allowed to proliferate misleading information in situations where a suspect is entitled to be advised of his rights.
In view of our disposition of this issue, we need not reach defendant's arguments with respect [*3]to the justification instruction and sentencing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 26, 2023