[938 NE2d 966, 912 NYS2d 533]

In the Matter of DANIEL H., a Person Alleged to be a Juvenile Delinquent, Appellant. PRESENTMENT AGENCY, Respondent.

Argued September 15, 2010; decided October 26, 2010

## SUMMARY

APPEAL from an order of the Appellate Division of the Supreme Court in the First Judicial Department, entered November 17, 2009. The Appellate Division, with two Justices dissenting, affirmed an order of disposition of the Family Court, Bronx County (Monica Drinane, J.), which had adjudicated appellant a juvenile delinquent upon a fact-finding determination that appellant had committed acts which, if committed by an adult, would have constituted the crimes of burglary in the third degree, grand larceny in the fourth degree (two counts), and identity theft in the third degree.

## APPEARANCES OF COUNSEL

*Legal Aid Society*, New York City (*Raymond E. Rogers, Tamara A. Steckler* and *Steven Banks*), for appellant.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Victoria Scalzo, Stephen J. McGrath* and *Leah Schmelzer* of counsel), for respondent.

## OPINION OF THE COURT

MEMORANDUM.

The appeal should be dismissed, without costs, on the ground that the two-Justice dissent at the Appellate Division was not on a question of law (*see* CPLR 5601 [a]).

Police arrested appellant Daniel H. at his school for the theft of credit cards after he had made an inculpatory statement without being advised of his *Miranda* rights. Appellant was transported to a precinct, left alone in an adult holding cell, and was again questioned by the same detectives in a sergeant's office rather than a designated juvenile room. A written inculpatory statement was made by appellant after he and his mother were advised of appellant's *Miranda* rights.

Following a hearing conducted on October 31, 2007, the Family Court precluded appellant's inculpatory oral statement and denied the suppression of his subsequent, inculpatory written statement. The court determined that the written statement was sufficiently attenuated from the earlier oral statement.* Appellant was adjudicated a juvenile delinquent for committing acts, which, if committed by an adult, would constitute the crimes of burglary in the third degree, grand larceny in the fourth degree, and identity theft in the third degree.

By a 3-2 decision, the Appellate Division affirmed the Family Court order, finding that the written statement was sufficiently attenuated from the earlier un-Mirandized statement (67 AD3d 527 [1st Dept 2009]). The two-Justice dissent sought to remit the action to Family Court for a new fact-finding hearing. Appellant appeals to this Court pursuant to CPLR 5601 (a).

Jurisdiction for an appeal to this Court predicated upon CPLR 5601 (a) requires that, at the Appellate Division, there be a "dissent by at least two justices on a question of law in favor of the party taking such appeal." The issue of whether a defendant's inculpatory statement is attenuated from his prior un-Mirandized statement presents a mixed question of law and fact (*see People v Paulman*, 5 NY3d at 129; *People v Ryan*, 12 NY3d 28 [2009]; *People v Conyers*, 68 NY2d 982 [1986]). As the two-Justice dissent was not on a question of law, this Court is without jurisdiction to decide the appeal (*see* CPLR 5601 [a]; *Merrill v Albany Med. Ctr. Hosp.*, 71 NY2d 990 [1988]; *Guaspari v Gorsky*, 29 NY2d 891 [1972]).

CIPARICK, J. (dissenting). Because I believe that the two-Justice dissent in the Appellate Division was on a question of

---

* The purpose of the doctrine of attenuation is to determine whether there was a sufficiently "definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning" and is no longer influenced by the taint of the earlier *Miranda* violation (*People v Chapple*, 38 NY2d 112, 115 [1975]; *see People v Paulman*, 5 NY3d 122 [2005]).

law, and therefore CPLR 5601 (a) permits our review as a matter of right, I would reach the question presented on this appeal, conclude that an incorrect legal standard was applied in this juvenile delinquency proceeding, and remit to Family Court for further consideration.

Whether the courts below applied the correct standard in determining that Daniel's statement was attenuated is a legal question firmly within our jurisdiction (*see People v Borges*, 69 NY2d 1031, 1033 [1987] ["While questions of attenuation generally present mixed questions of law and fact, where . . . the lower courts have applied an incorrect legal standard, an issue of law reviewable by this court is presented" (citations omitted)]). The Appellate Division dissent below explicitly took issue with the legal standard applied by the majority, not the application of that standard. In affirming Family Court's finding of attenuation, the Appellate Division majority held that "the issue of attenuation is not appreciably different for juveniles than for adults," and proceeded to conduct the attenuation analysis just as it would for an adult defendant (*Matter of Daniel H.*, 67 AD3d 527, 529 [2009]). The dissent disagreed about whether Daniel's age should inform the analysis, noting that although the facts here "may constitute a pronounced break in the case of an adult accused[, they] have different bearing on the determination with regard to a juvenile" (*id.* at 535 [Moskowitz, J., dissenting] [citations omitted]). This is a straightforward disagreement regarding the legal standard—whether or not attenuation should be assessed differently in cases where the suspect is a juvenile—and so presents a question of law we can, and should, address.

Turning to the merits, I agree with the dissent below that Daniel's age should be a factor in considering whether his Mirandized statement was sufficiently attenuated from his prior, unwarned statement. *Miranda* warnings " 'must precede the subjection of a [suspect] to questioning . . . unless there is such a definite, pronounced break in the interrogation that the [suspect] may be said to have returned, in effect, to the status of one who is not under the influence of questioning' " (*People v White*, 10 NY3d 286, 291 [2008], quoting *People v Chapple*, 38 NY2d 112, 115 [1975]). In other words, we aim to ensure that the two interrogations are not part of a "single continuous chain of events" (*Chapple*, 38 NY2d at 114).

In *People v Paulman* (5 NY3d 122 [2005]), we enumerated several considerations for determining whether an involuntary statement tainted a subsequent, Mirandized statement:

"New York courts have considered a number of factors, including the time differential between the *Miranda* violation and the subsequent admission; whether the same police personnel were present and involved in eliciting each statement; whether there was a change in the location or nature of the interrogation; the circumstances surrounding the *Miranda* violation, such as the extent of the improper questioning; and whether, prior to the *Miranda* violation, defendant had indicated a willingness to speak to police" (*id.* at 130-131).

Although it is an objective inquiry, these factors are meant to illuminate whether the suspect experienced the unwarned and later warned questioning as part of a continuous interrogation (*see id.* at 131; *Chapple*, 38 NY2d at 115).

Ultimately, the purpose of requiring a pronounced break is to ensure that the *Miranda* warnings effectively communicate a suspect's right to remain silent and refrain from self-incrimination (*see Chapple*, 38 NY2d at 115). One under "continuous and custodial interrogation may well be put in such a state of mind that the warnings which would ordinarily suffice will no longer be enough to protect his rights" (*id.*). As a plurality of the United States Supreme Court recently observed, "[u]pon hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again" (*Missouri v Seibert*, 542 US 600, 613 [2004]).

The risk that *Miranda* warnings might be ineffective is heightened where, as here, the suspect is a juvenile. Indeed, this case is illustrative. The police interrogated Daniel at his school in a custodial setting outside the presence of a parent or advocate, elicited a confession, and then, after reading *Miranda* warnings in the presence of his mother, repeated the interrogation at the police precinct approximately one hour later, in a space other than a designated juvenile room. That Daniel was 15 years old certainly impacts whether he "perceived a distinction" between the two interrogations sufficient to render his *Miranda* warnings effective (*Paulman*, 5 NY3d at 132).

Daniel's experience of these events is inseparable from his juvenile status for several reasons. Some of the *Paulman* factors, such as the circumstances surrounding the initial *Miranda* violation, require consideration of his youth. For example,

although the unwarned interrogation at his school was brief, the violation is more egregious because the suspect was an isolated, unaccompanied juvenile. Other factors, such as a suspect's initial willingness to talk to the police, inevitably mean something different when the suspect is a minor, and may be entirely inapplicable. Additionally, a child is less likely than an adult to perceive any given period spent in constant police custody as a "break," and is more likely to feel compelled to continue answering questions posed by the same officers who conducted the unwarned interrogation. Relatedly, a juvenile suspect is less likely to comprehend the meaning of *Miranda* warnings read shortly following a confession and understand that he can remain silent. It is also important to note that by not holding and interrogating Daniel in a designated juvenile room, as required by the Family Court Act, the police may have acted improperly (Family Ct Act § 305.2 [4] [b]; § 344.2 [2]).

In conclusion, Daniel's juvenile status exacerbated the severity of the police misconduct during the unwarned interrogation, decreased the likelihood that he understood his subsequent *Miranda* warnings, and impacted the validity of his Mirandized statement in a variety of other ways. Whether, on balance, there was a sufficient break in the interrogation is indeed a factual question, but age is clearly a relevant factor that should have been taken into account here.

Therefore, I would reverse and remit to Family Court for consideration of whether, in light of Daniel's youth, his two inculpatory statements were part of a "single continuous chain of events" resulting in "inadequate assurance that the *Miranda* warnings were effective" (*Paulman*, 5 NY3d at 130).

Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur; Judge CIPARICK dissents and votes to reverse in an opinion in which Chief Judge LIPPMAN concurs.

Appeal dismissed, without costs, in a memorandum.