■ In the Matter of JAMAL S., a Person Alleged to be a Juvenile Delinquent, Appellant. [999 NYS2d 7]—

Order, Family Court, Bronx County (Peter J. Passidomo, J.), entered on or about November 19, 2012, which adjudicated appellant a juvenile delinquent upon his admission that he committed an act that, if committed by an adult, would constitute the crime of criminal possession of a weapon in the second degree, and placed him on probation for a period of 18 months, reversed, on the law, without costs, the motion to suppress granted, the dispositional order vacated, and the petition dismissed.

We hold that the police search that yielded the firearm found in Jamal S.'s shoe was unreasonable as a matter of law and that the weapon should have been suppressed.

Officer Leo and other police officers took Jamal and another individual into custody after seeing the two riding bicycles in the wrong direction on a one-way street. Both were charged with disorderly conduct under Penal Law § 240.20 (7). The officers intended to issue summonses for the violations. Jamal, who said he was 16 years old, could not be given a summons because he had no identification. The officers therefore decided to take him to the precinct, ascertain his identity and issue the summons afterwards. Jamal was handcuffed, searched and taken to the precinct in a motor patrol car. Upon his arrival at the precinct, Jamal was searched again at the desk. No contraband was recovered as a result of either of these two searches.

After 20 minutes of detention at the precinct, Jamal admitted that he was only 15 years old. Once informed of Jamal's actual age, Officer Leo testified that he intended to notify his parents of his whereabouts and then complete a juvenile report. Officer Leo testified that he then spoke with Jamal's mother at approximately 11:00 p.m. Although the mother said she would

come and get Jamal, Leo instructed her to "come in the morning." The record discloses no reason for such delay in releasing Jamal to his mother prior to the search in question. At Leo's request, Officer Dooley lodged Jamal in the juvenile room where the police intended to hold him pending his parents' arrival at the precinct. Dooley testified that he had no reason to expect that Jamal "had anything on him" at that time. At Dooley's direction, Jamal removed his belt, shoelaces and shoes. Dooley found the gun inside of Jamal's right shoe after Jamal removed it as directed. When asked why he directed Jamal to remove his shoes, Officer Dooley responded, "Just he could be hiding anything [sic]." This unfounded suspicion provided no basis for the search.

CPL 140.10 permits a police officer to arrest a person for any "offense" that is committed in the officer's presence. The term "offense" is broadly defined to include conduct for which a sentence to a term of imprisonment or a fine is provided by state or local law (see Penal Law § 10.00 [1]). Family Court Act § 305.2 (2), however, provides that "[a]n officer may take a child under the age of sixteen into custody without a warrant in cases in which he [or she] may arrest a person for a crime . . . ." The term "crime" includes only misdemeanors and felonies, not violations (see Penal Law § 10.00 [6]). Accordingly, a search may be conducted where a juvenile is taken into custody for conduct which, if committed by an adult, would constitute a crime (see e. g. Matter of Curtis H., 216 AD2d 173, 174 [1st Dept 1995]). As disorderly conduct is not a crime, Family Court Act § 305.2 (2) prohibited Jamal's warrantless arrest for that offense (see Matter of Victor M., 9 NY3d 84, 87 [2007]). Based on this record, it is clear that upon learning that Jamal was a juvenile the police nonetheless kept him under arrest with no statutory authority for doing so.

The dissent cites People v Ellis (62 NY2d 393 [1984]) and People v Copeland (39 NY2d 986 [1976]) for the proposition that Jamal's failure to produce identification "justified the police conduct." Each of these cases involved an authorized arrest for a traffic infraction in a situation where an adult could not be issued a summons on the spot because of his inability to produce identification (see e.g. Ellis, 62 NY2d at 396-397). In Matter of Charles M. (143 AD2d 96 [2d Dept 1988]), the Court held that the arrest of a juvenile for a violation was not vitiated by section 305.2 (2) because of the youth's physical appearance which gave the police reason to believe he was 16 years of age or older (id. at 97). Even assuming Jamal's arrest for disorderly conduct was justifiable under Ellis, Copeland and Charles M., the gun

was recovered from his shoe by means of an unreasonable search.

The police had no reason to believe Jamal was more than 15 years old when he was searched for the third time and directed to remove his shoes. To be sure, on the presentment agency's direct examination, Officer Leo testified as follows: "Q. And upon *learning* that the respondent was, *in fact*, 15 years old what did you do? [emphasis added] A. I asked Officer Dooley to lodge him in the juvenile room . . . ."* At this point, when Jamal was being held pending his parents' arrival, he was under temporary detention as opposed to arrest. "A temporary detention justifies only a frisk, not a full-fledged search" (*Victor M.*, 9 NY3d at 88). The removal of Jamal's shoes was far more intrusive than a frisk or a patdown (*compare Matter of Shamel C.*, 254 AD2d 87 [1st Dept 1998] [momentary lifting of a pant leg held to be incidental to a patdown]). We find no merit to the presentment agency's argument that safety required the removal of Jamal's shoes. "The touchstone of the Fourth Amendment is reasonableness . . . ." (*People v Molnar*, 98 NY2d 328, 331 [2002] [internal quotation marks omitted].) Considerations of safety provide no justification in this case where Jamal was continuously in police custody and had been searched twice before being directed to remove his shoes. It is of no moment that Jamal was directed to remove his shoes pursuant to an alleged standard procedure. "[A]n unreasonable search is not somehow rendered reasonable, and therefore constitutionally permissible, by the mere fact that a departmental procedure was followed" (*People v Galak*, 80 NY2d 715, 718 [1993]). The standard of reasonableness still applies (*id.*). We recognize that in appropriate cases law enforcement officers are authorized to employ reasonable measures to guard against detainees' self-infliction of harm. Such reasonable measures may include the removal of belts and shoelaces (*cf. State Bank of St. Charles v Camic*, 712 F2d 1140, 1146 [7th Cir 1983], *cert denied* 464 US 995 [1983]). Nonetheless, the removal of Jamal's shoes cannot be justified as a protective measure where, as noted above, he had been twice searched by police officers who had no reason to expect that he had "anything on him" or otherwise posed a danger.

The dissent's suggestion that the search conducted here was necessary to prevent Jamal from shooting himself or a police officer is inflammatory, and unsupported by the record of events in this case, which began with the detention of a juvenile who

---

* This testimony refutes the dissent's position that Jamal's actual age was in question when the officers decided to hold him.

did nothing more than ride a bicycle in the wrong direction on a roadway. The dissent's position, if taken to its logical extreme, would call for a full search of any juvenile even temporarily detained in a precinct for any reason. This position finds no support in the Fourth Amendment. Concur—Acosta, DeGrasse and Richter, JJ.

Tom, J.P., and Andrias, J., dissent in a memorandum by Andrias, J., as follows: Holding that the revolver discovered in appellant's shoe while he was detained in a police station should have been suppressed, the majority would reverse the order which adjudicated appellant a juvenile delinquent upon his admission that he committed an act that, if committed by an adult, would constitute the crime of criminal possession of a weapon in the second degree. Because I believe that appellant was lawfully taken into custody, and, considering the totality of the circumstances, that the limited search undertaken when appellant was about to be placed in the precinct's juvenile room, unguarded, was reasonable in scope and manner of execution, I respectfully dissent.

At approximately 10:30 p.m., a police officer observed appellant and another individual riding bicycles against the flow of traffic on a one way street. Because the individuals were swerving in and out of cars and "creating hazardous conditions," the officer stopped them, intending to issue summonses for disorderly conduct. However, when the officer asked for identification, appellant responded that he was 16 years old, and that he did not have identification with him. Consequently, the officer decided to take appellant back to the precinct to confirm his identity before issuing a summons. Appellant's companion, an adult, was also taken into custody.

Appellant was patted down, handcuffed, placed in a police vehicle, and taken to the precinct, where he was searched a second time at the desk. No contraband was discovered in either search. Approximately 20 minutes later, appellant told the officer that he was only 15 years old. At that point, the officer, intending to notify appellant's parent and complete a juvenile report, asked another officer to place appellant in the precinct's juvenile room.

Appellant told the first officer that he did not know his mother's phone number because it was in his cell phone, and that the officer would have to charge the phone before calling her. The officer then charged the phone and completed the juvenile report. Meanwhile, the second officer frisked appellant when he first took him to the juvenile room and did not discover any contraband. Although he had no reason to expect that appellant "had anything on him," the officer then asked appel-

lant, who was not handcuffed, to sit in a chair and to remove his belt and shoelaces, and to take off his shoes one by one and bang them on the ground. When appellant removed his right shoe and slid it towards the officer, the officer saw a black revolver inside it in plain view. Both officers testified that the requests for appellant to remove his belt, shoelaces and shoes were made in accordance with the precinct's standard lodging procedure to ensure that appellant did not possess anything that he could use to harm himself and was not secreting any weapon or contraband.

Having probable cause to believe that appellant committed in his presence the offense of disorderly conduct, a violation under Penal Law § 240.20 (7), the officer lawfully elected to take appellant into custody, rather than issuing a summons, based on appellant's inability to produce identification (*see People v Soto*, 297 AD2d 581 [1st Dept 2002], *lv denied* 99 NY2d 564 [2002]; *see also People v Rodriguez*, 84 AD3d 500, 501 [1st Dept 2011], *lv denied* 17 NY3d 861 [2011]). Although a warrantless arrest of a juvenile is authorized only in cases where an adult could be arrested "for a crime" (Family Ct Act § 305.2 [2]), under the circumstances before us the fact that appellant was under age 16 did not vitiate the arrest. While appellant told the officer at the precinct that he was only 15, he had lied to the officer about his age at the scene of the offense, which gave the officer reasonable justification to believe that appellant was legally an adult (*see People v Wilson*, 254 AD2d 316 [2d Dept 1998]; *Matter of Charles M.*, 143 AD2d 96 [2d Dept 1998]). Thus, the arrest of appellant for a violation was lawful because it was based on a reasonable belief as to age, and probable cause that an offense had been committed (*id.*; *see also Matter of Carlton F.*, 25 AD3d 610 [2d Dept 2006]; *Matter of Michael W.*, 295 AD2d 134 [1st Dept 2002], *lv denied* 98 NY2d 614 [2002]; *Matter of James T.*, 189 AD2d 580 [1st Dept 1993]; *compare Matter of Victor M.*, 9 NY3d 84, 87 [2007] [arrest not authorized where the appellant "was 15 years old at the time of his arrest, and there (was) no evidence in the record that the officer either believed or had reason to believe that he was older"]). Having lawfully arrested defendant, the police were justified in conducting a search incident to that arrest (*see People v Lewis*, 50 AD3d 595 [1st Dept 2008], *lv denied* 11 NY3d 790 [2008]; *People v Hernandez*, 27 AD3d 292 [1st Dept 2006], *lv denied* 6 NY3d 848 [2006]).

Appellant argues that since the alleged disorderly conduct involved the unlawful operation of a bicycle, it was essentially a minor traffic offense, for which an arrest and incidental search would not be proper (*see People v Marsh*, 20 NY2d 98 [1967]).

However, the conduct observed by the police satisfied the elements of the nontraffic offense of disorderly conduct, including the element of, at least recklessly, creating a risk of public inconvenience, annoyance or alarm (*see* Penal Law § 240.20 [7]). In any event, even treating appellant's conduct as a traffic infraction, his failure to produce identification, thus rendering it impracticable to issue a summons, justified the police conduct (*see People v Ellis*, 62 NY2d 393, 396 [1984]; *People v Copeland*, 39 NY2d 986 [1976]).

The majority believes that the search that revealed the revolver was nevertheless unreasonable because it took place after appellant had told the officer that he was 15 years old. However, appellant's continued detention, at midnight, pending the arrival of his mother, was reasonable. Although appellant now claimed that he was only 15, he still did not have any identification, which would have enabled the officer to confirm that he was in fact a juvenile, and not 16 as he had originally claimed. As appellant's actual age was still in question, the officer appropriately determined that the proper course was to contact appellant's mother, and have her come to the precinct to pick him up. Once it was determined that appellant would be further detained, it was reasonable and prudent for the police to conduct a protective patdown search and, in accordance with standard lodging procedure, to request that appellant, for his own safety and the safety of others, remove his belt, shoelaces and shoes before leaving him by himself in the juvenile room to await his mother (*see e.g. Matter of Shamel C.*, 254 AD2d 87 [1st Dept 1998] [check for weapons in shoe was a permissible minimum intrusion, incidental to patdown search, where officer reasonably believed juvenile was a runaway within meaning of Family Ct Act § 718 (a)]).

In this regard, it is worthy to note that a police direction to a detainee to remove footwear does not transform that search, without more, into a strip search (*see People v Vega*, 56 AD3d 578 [2d Dept 2008], *lv denied* 12 NY3d 763 [2009]). Only unreasonable searches are prohibited, "and the individual's reasonable expectation of privacy is a significant factor in determining reasonableness" (*People v Perel*, 34 NY2d 462, 466 [1974]). Even assuming that the police knew that appellant was in fact a minor when they took him to the juvenile room, the majority fails to explain why procedures undertaken for the juvenile's own protection are unreasonable or violate his legitimate expectation of privacy. Unlike the juvenile in *Matter of Victor M.* (9 NY3d 84 [2007], *supra*), cited by the majority, appellant was properly brought to the precinct house, largely as a result of his own misrepresentation.

Indeed, the majority concedes that in an appropriate case law enforcement officers are authorized to employ reasonable measures to guard against a detainee's self infliction of harm. Nevertheless, the majority finds that the removal of appellant's shoes cannot be justified as a protective measure because he had twice been searched by police officers who had no reason to expect that he had "anything on him," or otherwise posed a danger. However, in *United States v Edwards* (415 US 800 [1974]), the Supreme Court held that a search incident to arrest may take place after the arrestee has been transported to a place of detention, even where officers may have conducted a brief patdown search at the original time and place of arrest. Furthermore, the State has a significant interest in preserving life and preventing suicidal acts of its detainees (*see generally Matter of Bezio v Dorsey*, 21 NY3d 93, 104-105 [2013]), and the legitimate ends of a detainee safety search are broader than a search incident to a lawful arrest (*see Fate v Charles*, 24 F Supp 3d 337 [SD NY 2014]). Thus, while the majority assigns great significance to the fact that no contraband was discovered in the prior patdowns, it remains that appellant was subject to the actual supervision and control of police officers, who were responsible for his safety until such time as he could be released to his mother's custody. Significantly, while the majority notes that the purpose of asking appellant to remove his belt, shoelaces and shoes was unjustified as a safety measure for the protection of police officers, two patdown searches having been conducted previously, it fails to acknowledge its reasonableness a safety measure for the protection of the juvenile himself.

In sum, considering the totality of the circumstances, it was reasonable, both in scope and manner of execution, for the second officer, who had not participated in appellant's arrest or the prior patdown searches, to ask appellant to remove his shoes as a protective measure before appellant was left by himself in the juvenile room. As a practical matter, neither the interest of the juvenile detainee nor the interest of law enforcement, including the safety of police officers and juvenile detainees, will be promoted by the establishment of a rule that prohibits the search of a juvenile's shoes in a police station. Such a holding would unduly restrict police searches of detainees in police precincts and may facilitate the secretion of weapons in shoes by detainees to avoid detection. Indeed, had the police failed to properly search appellant before placing him in the juvenile room, one can only imagine the public outcry had appellant shot himself or harmed an officer with the gun secreted in his shoe.