This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 146
In the Matter of Jamal S., a
Person Alleged to be a Juvenile
Delinquent,
          Respondent.
-------------------------
Presentment Agency,
          Appellant.


          Tahirih M. Sadrieh, for appellant.
          Raymond E. Rogers, for respondent.


PIGOTT, J.:

          On August 13, 2012 at approximately 10:30 p.m.,
Officer Leo and his partner were on patrol when they observed
respondent Jamal S. and his companion riding their bicycles
against the flow of traffic on a one-way street.  The officers
stopped the two individuals.  Respondent told the officers that

- 1 -

he was 16 years old.  Initially, Officer Leo intended to issue respondent a summons for disorderly conduct (Penal Law § 240.20 [7]), but because he was unable to produce identification, the officers patted him down, placed him in handcuffs and transported him to the precinct.  When he arrived at the precinct at approximately 11:00 p.m., he was searched a second time.

At approximately 11:20 p.m., respondent told the officers that he was actually 15 years old.  The officers then intended to call his parents, but respondent was unable to recall their telephone numbers, and, although his cell phone contained the numbers, it was not charged.  While the officers were charging respondent's phone for him, Officer Leo asked Officer Dooley to place respondent in the juvenile room.  Officer Dooley patted respondent down and directed him to remove his belt, shoelaces and shoes as standard police procedure for juveniles. A revolver was recovered from one of the shoes.

The presentment agency filed a juvenile delinquency petition charging respondent with various weapon possession counts.  Family Court denied respondent's motion to suppress, holding that the police had probable cause to arrest him for disorderly conduct based on the street encounter.  The court further held that the seizure of the gun was not the result of an illegal search, because the officers were justified in having respondent remove his belt, shoelaces and shoes as part of police protocol to ensure a detainee's safety.

Respondent thereafter pleaded guilty to committing an act that, had it been committed by an adult, constituted criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]).  He was adjudicated a juvenile delinquent and placed on 18 months' probation.

A divided Appellate Division reversed, with the majority holding that the search that uncovered the weapon from respondent's shoe was unreasonable as a matter of law (123 AD3d 429, 429 [1st Dept 2014]).  As relevant here, the majority rejected the presentment agency's argument that matters of safety permitted the officers to require respondent to remove his shoes, stating that safety provided "no justification in this case where [respondent] was continuously in police custody and had been searched twice before being directed to remove his shoes" (id. at 431).  It acknowledged that there are "appropriate cases" when "officers are authorized to employ reasonable measures to guard against detainees' self-infliction of harm," which "may include the removal of belts and shoelaces," but the removal of the shoes could not be considered a protective measure since officers had previously searched him and had no basis to believe that respondent possessed contraband or otherwise was dangerous (id.).

The dissenters countered "that the limited search undertaken when [respondent] was about to be placed in the precinct's juvenile room, unguarded, was reasonable in scope and manner of execution" (id. at 432).  They concluded that it was of

no moment that, at the time of the search, the officers "had no reason to suspect that [respondent] had 'anything on him,' or otherwise posed a danger," because respondent "was subject to the actual supervision and control of police officers, who were responsible for his safety until such time as he could be released to his mother's custody" (id. at 435).

The presentment agency appealed to this Court as of right pursuant to CPLR 5601(a), and we now reverse.

At issue here is whether the police had the authority to arrest respondent and whether the subsequent search of his shoes was reasonable. Although "questions of the reasonableness of [police] conduct can rarely be resolved as a matter of law even when the facts are not in dispute" (People v Harrison, 57 NY2d 470, 478 [1982]), here, the majority and dissent did not disagree on facts or inferences material to the narrow issues before us. Rather, the majority and dissent disagreed as to whether the search of respondent's shoes was justified, as a matter of law (compare 123 AD3d at 431 with id. at 434-435 [Andrias, J., dissenting]). Therefore, the dual dissent was on a question of law and we have jurisdiction over this appeal (see Arthur Karger, Powers of the New York Court of Appeals §§ 6:4, 6:5, at 200-207 [3d ed rev 2005]).

On the merits, we agree with Family Court that the officers' initial arrest of respondent was lawful in light of what they believed at the time (cf. Matter of Victor M., 9 NY3d

84, 87 [2007] [holding that a warrantless arrest of juvenile for committing violations was improper where the juvenile was 15 years old at the time of the arrest and there was "no evidence in the record that the officer believed or had reason to believe that he was older"]). Respondent initially told police on the street that he was 16 years old. Because he lacked identification, the police transported him to the precinct, where, nearly an hour later, he told them that he was only 15 years old. Thereafter, the officers treated respondent as a juvenile, placing him in a juvenile room and making him remove his belt, shoelaces and shoes as a protective measure until his parents were notified and he could be picked up from the precinct. Based on respondent's representation that he was 16 years old and the officers' observations of him in the street, the officers had probable cause to arrest respondent for disorderly conduct.

We also conclude that the limited search of respondent's shoes was reasonable. The majority found no fault with the request that respondent remove his belt and shoelaces as a safety precaution; rather it was the request to remove his shoes that the majority held to be "far more intrusive than a frisk or patdown" (123 AD3d at 431 [citation omitted]). However, the officers were not first required to suspect that respondent either possessed contraband or posed a danger to himself or officers before being directed to remove his shoes. In that

regard, the limited search of respondent's shoes while he was temporarily detained and awaiting the notification of his parents was a reasonable protective measure employed by police to ensure both the safety of respondent and the officers, and the intrusion was minimal (see generally Matter of Shamel C., 254 AD2d 87, 87 [1st Dept 1998]).[1]

Accordingly, the order of the Appellate Division should be reversed, without costs, and the dispositional order of Family Court, Bronx County, reinstated.

---

[1] The dissent interprets our holding by suggesting that it "opens the door to intrusive searches of every juvenile who enters a precinct, even in cases where a parent is willing and able to pick up a child who is being held without legal authority" (dissenting op at 5 n 2). Respondent was brought to the precinct based upon the misrepresentation that he was 16 years old, and, when the officers decided to treat him as a juvenile, they placed him in the juvenile room. Having respondent remove his shoes as part of police protocol while he was temporarily detained waiting for his parents to arrive was simply not "intrusive," as the dissent claims.

Matter of Jamal S., A Person Alleged to be a Juvenile Delinquent

No. 146

RIVERA, J.(dissenting):

The appeal should be dismissed for lack of jurisdiction under CPLR 5601 (a) because the Appellate Division's two-justice dissent was not on a question of law. Accordingly, I would not reach the merits.

A party may take an appeal as of right from an order of the Appellate Division pursuant to CPLR 5601 (a) "where there is a dissent by at least two justices on a question of law in favor of the party taking such appeal" (CPLR 5601 [a]; Matter of Robert S., 76 NY2d 770 [1990]; see Arthur Karger, Powers of the New York Court of Appeals §§ 6:4, 6:5, at 200-207 [3d ed rev 2005]). No appeal lies where the dual dissent is on a question of fact or a mixed question of law and fact (see e.g. Matter of Daniel H., 15 NY3d 883, 884 [2010]). As the Court has explained, a mixed question is presented where "facts are disputed, where credibility is at issue or where reasonable minds may differ as to the inference to be drawn from the established facts" (People v McRay, 51 NY2d 594, 601 [1980]). The Court has consistently applied this limitation on jurisdiction to delinquency cases (see e.g. Matter of Daniel H., 15 NY3d 883, 884 [2010]; Matter of Jaquan M., 19 NY3d 1041 [2012]; Matter of Darryl C., 19 NY3d 1040

- 1 -

[2012]; <u>Matter of Melissa O.</u>, 87 NY2d 916 [1996]).

In determining whether jurisdiction is properly based on CPLR 5601, this Court makes an independent assessment and is not bound by any characterizations of the grounds for the dissent contained in the Appellate Division opinion (<u>Merrill by Merrill v Albany Med. Ctr. Hosp.</u>, 71 NY2d 990, 991 [1988]).  Thus, the fact that the Appellate Division majority described its decision as being made "as a matter of law" is irrelevant to whether the dissent was actually predicated on a mixed question of law and fact (<u>see</u> <u>People v Holland</u>, 18 NY3d 840, 841 [2011]).  Instead, we must look to the analytical disagreement in the dissent to determine whether a question of law is presented (<u>Feldsberg v Nitschke</u>, 49 NY2d 636, 640 n 1 [1980]).  "Where it is equivocal whether a dissent rests upon a disagreement in fact or law, the dissent is not on a question of law within the meaning of CPLR 5601 (a)" (<u>Gillies Agency, Inc. v Filor</u>, 32 NY2d 759, 760 [1973]).

This is not a case where a question of law as to the "minimum showing necessary" to establish a predicate for a search or seizure is presented (<u>People v McRay</u>, 51 NY2d 594, 601 [1980]).  Instead, the parties focus on the reasonableness of the police conduct.  It is by now well established that the reasonableness of police conduct presents a mixed question of law and fact generally beyond the review of this Court (<u>see</u> <u>e.g.</u> <u>People v Williams</u>, 17 NY3d 834, 835 [2011]["The reasonableness of

a seizure, the existence of probable cause or reasonable suspicion, the classification of a detention as an arrest and the attenuation of evidence from police misconduct are all mixed questions of law and fact that are beyond this Court's review unless there is no record support for the determinations of the court below"]).  A determination of what is reasonable in any given situation requires a contextualized assessment of specific facts.  While questions concerning the reasonableness of police conduct frequently arise in criminal cases, this Court applies the same standard in delinquency cases (see Matter of Daniel H., 15 NY3d at 884).

In this case the dissent and majority's conclusions do not depend on the application of different legal standards. Indeed, there is no dispute of law between the dissent and the majority.  Rather, the disagreement that animates the dual dissent is whether the search of this respondent was reasonable "considering the totality of the circumstances," as the dissent termed it (Matter of Jamal S., 123 AD3d 429, 433 [1st Dept 2014]).  The dissent's conclusions as to the reasonableness of the search turn on the meaning attached to the facts and the inferences to be drawn concerning the propriety of respondent's arrest, transport to the precinct, continued detention, and finally the search itself.  That is, the dissenters, "draw . . . different inference[s] from the established facts [than the majority did], thus deciding [only] mixed question[s] of law and

fact" (<u>People v Brown</u>, 25 NY3d 973, 976 [2015]).  Unlike the Appellate Division majority, the dissent inferred that it was reasonable for the police to doubt respondent was 15 years old, given the facts that at the time of his arrest he told the police he was 16 and then failed to present identification to support his later claim that he was only 15.  Further, and contrary to the majority's view that respondent's encounter with the police "began with the detention of a juvenile who did nothing more than ride a bicycle in the wrong direction on a roadway," the dissenters found that respondent had committed disorderly conduct, which merited an arrest in light of respondent's claim to be 16.  Based upon the fact that respondent initially lied about his age, the dissent inferred that his presence in the precinct was "largely . . . a result of his own misrepresentation" (<u>Matter of Jamal S.</u>, 123 AD3d at 434).  The dissent also had no quarrel with the intentional overnight delay in releasing respondent to his mother prior to the search, yet the majority found the record lacked an explanation for such delay when respondent's mother told the arresting officer at 11 p.m. that she would pick him up, and the officer told her to instead "come in the morning."[1]

---

[1] Although the Appellate Division dissent and majority largely agree upon the facts, my colleagues are incorrect that the majority and dissent were in complete agreement about the facts material to whether the search was reasonable based on the "totality of the circumstances" (maj op at 5).  The dissent's timeline, for example, has the officers placing respondent in the

These are just some of the facts and inferences that informed the dissent's view of the lawfulness of respondent's detention in the juvenile room and the reasonableness of a third search of a previously searched teenager.  As with a typical mixed question of law and fact, "reasonable minds may differ as to the inference to be drawn" from the record (People v Harrison, 57 NY2d 470, 477, citing McRay, 51 NY2d at 601), but for purposes of determining whether an appeal as of right lies under CPLR 5601 (a), there is no legal issue upon which the Appellate Division dissent and majority disagree.[2]

The dissent's conclusion that the police conduct was reasonable "considering the totality of the circumstances" presents a mixed question of law and fact, and is therefore beyond the scope of our power to review.  I dissent.

---

juvenile room and conducting the search while his phone is still charging, before speaking to respondent's mother (Matter of Jamal S., 123 AD3d at 432-433).  The majority concludes that the police spoke to respondent's mother at 11 p.m., prior to the search, and inexplicably told her to pick him up the next day (id. at 429-430).

[2] In any event, the majority's conclusion that searching a juvenile's shoes is reasonable as a matter of law opens the door to intrusive searches of every juvenile who enters a precinct, even in cases where a parent is willing and able to pick up a child who is being held without legal authority.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order reversed, without costs, and dispositional order of Family Court, Bronx County, reinstated. Opinion by Judge Pigott. Judges Abdus-Salaam, Fahey and Garcia concur. Judge Rivera dissents and votes to dismiss the appeal, in an opinion in which Chief Judge DiFiore and Judge Stein concur.


Decided October 27, 2016