OPINION OF THE COURT
Pigott, J.
On August 13, 2012 at approximately 10:30 p.m., Officer Leo and his partner were on patrol when they observed respondent Jamal S. and his companion riding their bicycles against the flow of traffic on a one-way street. The officers stopped the two individuals. Respondent told the officers that he was 16 years old. Initially, Officer Leo intended to issue respondent a summons for disorderly conduct (Penal Law § 240.20 [7]), but because he was unable to produce identification, the officers patted him down, placed him in handcuffs and transported him to the precinct. When he arrived at the precinct at approximately 11:00 p.m., he was searched a second time.
*95 At approximately 11:20 p.m., respondent told the officers that he was actually 15 years old. The officers then intended to call his parents, but respondent was unable to recall their telephone numbers, and, although his cell phone contained the numbers, it was not charged. While the officers were charging respondent’s phone for him, Officer Leo asked Officer Dooley to place respondent in the juvenile room. Officer Dooley patted respondent down and directed him to remove his belt, shoelaces and shoes as standard police procedure for juveniles. A revolver was recovered from one of the shoes.
The presentment agency filed a juvenile delinquency petition charging respondent with various weapon possession counts. Family Court denied respondent’s motion to suppress, holding that the police had probable cause to arrest him for disorderly conduct based on the street encounter. The court further held that the seizure of the gun was not the result of an illegal search, because the officers were justified in having respondent remove his belt, shoelaces and shoes as part of police protocol to ensure a detainee’s safety.
Respondent thereafter pleaded guilty to committing an act that, had it been committed by an adult, constituted criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]). He was adjudicated a juvenile delinquent and placed on 18 months’ probation.
A divided Appellate Division reversed, with the majority holding that the search that uncovered the weapon from respondent’s shoe was unreasonable as a matter of law (123 AD3d 429, 429 [1st Dept 2014]). As relevant here, the majority rejected the presentment agency’s argument that matters of safety permitted the officers to require respondent to remove his shoes, stating that safety provided “no justification in this case where [respondent] was continuously in police custody and had been searched twice before being directed to remove his shoes” (id. at 431). It acknowledged that there are “appropriate cases” when “officers are authorized to employ reasonable measures to guard against detainees’ self-infliction of harm,” which “may include the removal of belts and shoelaces,” but the removal of the shoes could not be considered a protective measure since officers had previously searched him and had no basis to believe that respondent possessed contraband or otherwise was dangerous (id.).
The dissenters countered “that the limited search undertaken when [respondent] was about to be placed in the precinct’s *96 juvenile room, unguarded, was reasonable in scope and manner of execution” (id. at 432). They concluded that it was of no moment that, at the time of the search, the officers “had no reason to expect that [respondent] had ‘anything on him,’ or otherwise posed a danger,” because respondent “was subject to the actual supervision and control of police officers, who were responsible for his safety until such time as he could be released to his mother’s custody” (id. at 435).
The presentment agency appealed to this Court as of right pursuant to CPLR 5601 (a), and we now reverse.
At issue here is whether the police had the authority to arrest respondent and whether the subsequent search of his shoes was reasonable. Although “questions of the reasonableness of [police] conduct can rarely be resolved as a matter of law even when the facts are not in dispute” (People v Harrison, 57 NY2d 470, 478 [1982]), here, the majority and dissent did not disagree on facts or inferences material to the narrow issues before us. Rather, the majority and dissent disagreed as to whether the search of respondent’s shoes was justified, as a matter of law (compare 123 AD3d at 431 with id. at 434-435 [Andrias, J., dissenting]). Therefore, the dual dissent was on a question of law and we have jurisdiction over this appeal (see Arthur Karger, Powers of the New York Court of Appeals §§ 6:4, 6:5 at 200-207 [3d ed rev 2005]).
On the merits, we agree with Family Court that the officers’ initial arrest of respondent was lawful in light of what they believed at the time (cf. Matter of Victor M., 9 NY3d 84, 87 [2007] [holding that a warrantless arrest of a juvenile for committing violations was improper where the juvenile was 15 years old at the time of the arrest and there was “no evidence in the record that the officer either believed or had reason to believe that he was older”]). Respondent initially told police on the street that he was 16 years old. Because he lacked identification, the police transported him to the precinct, where, nearly an hour later, he told them that he was only 15 years old. Thereafter, the officers treated respondent as a juvenile, placing him in a juvenile room and making him remove his belt, shoelaces and shoes as a protective measure until his parents were notified and he could be picked up from the precinct. Based on respondent’s representation that he was 16 years old and the officers’ observations of him in the street, the officers had probable cause to arrest respondent for disorderly conduct.
*97 We also conclude that the limited search of respondent’s shoes was reasonable. The majority found no fault with the request that respondent remove his belt and shoelaces as a safety precaution; rather it was the request to remove his shoes that the majority held to be “far more intrusive than a frisk or a patdown” (123 AD3d at 431 [citation omitted]). However, the officers were not first required to suspect that respondent either possessed contraband or posed a danger to himself or officers before being directed to remove his shoes. In that regard, the limited search of respondent’s shoes while he was temporarily detained and awaiting the notification of his parents was a reasonable protective measure employed by police to ensure both the safety of respondent and the officers, and the intrusion was minimal (see generally Matter of Shamel C., 254 AD2d 87, 87 [1st Dept 1998]).*
Accordingly, the order of the Appellate Division should be reversed, without costs, and the dispositional order of Family Court, Bronx County, reinstated.

 The dissent interprets our holding by suggesting that it “opens the door to intrusive searches of every juvenile who enters a precinct, even in cases where a parent is willing and able to pick up a child who is being held without legal authority” (dissenting op at 100 n 2). Respondent was brought to the precinct based upon the misrepresentation that he was 16 years old, and, when the officers decided to treat him as a juvenile, they placed him in the juvenile room. Having respondent remove his shoes as part of police protocol while he was temporarily detained waiting for his parents to arrive was simply not “intrusive,” as the dissent claims.